

# NUMBER 13-10-00585-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

| | |
|---|---|
| **JOSUE GONZALEZ RODRIGUEZ,** | **Appellant,** |
| **v.** | |
| **THE STATE OF TEXAS,** | **Appellee.** |

### On appeal from the 430th District Court
### of Hidalgo County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Garza and Vela
### Memorandum Opinion by Justice Rose Vela

Appellant, Josue Gonzalez Rodriguez, was indicted for the capital murder of

Ruben Varela. *See* TEX. PENAL CODE ANN. § 19.03(a)(3) (West Supp. 2011). He filed a

motion to suppress his written statement as well as the audio recording thereof. Following a hearing, the trial court suppressed the audio recording but refused to suppress his written statement. A jury convicted him of the offense. Because the State did not seek the death penalty, the trial court assessed punishment at life imprisonment. *See id.* § 12.31(a)(2) (West 2011). By one issue, appellant asserts the trial court erred by refusing to suppress his written statement because he did not make a knowing, intelligent, and voluntary waiver of his rights under the Fifth Amendment to the United States Constitution, Article 1, Sections 9, 10, and 19 of the Texas Constitution, and Article 38.23 of the Texas Code of Criminal Procedure. We affirm.

## I. MOTION TO SUPPRESS

During the suppression hearing, the State called Corporals Ted Rodriguez and Manuel Casas to testify about the procedures they followed while obtaining appellant's written statement. Both officers are investigators for the Mission Police Department. The defense did not call any witnesses to testify at the suppression hearing.

Corporal Rodriguez, who is fluent in Spanish, testified he and Corporal Casas interrogated appellant "in the sergeant's office" at the Mission Police Department. He stated appellant spoke Spanish and "understood English." Before speaking, to appellant, the officers advised him of his *Miranda*[1] warnings. When the prosecutor asked Corporal Rodriguez, "Did the defendant indicate to you that he understood each of these rights?", he said, "He understood his rights. He stated that he did." When asked how appellant indicated he understood all of his rights, Corporal Rodriguez said, "[T]he

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

2

interview was taken by both Corporal Casas and I. We read the rights one by one while I was there. He also acknowledged the rights, and understood the rights by signing at the bottom of the Miranda Rights Form." When the prosecutor asked him, "Was there any question in your mind as to whether the defendant understood his rights?", he said, "No. He understood perfectly."

Corporal Rodriguez identified State's exhibit fifty-two[2] as the Spanish-language *Miranda* rights form, which he and Corporal Casas used during appellant's interrogation. This preprinted form shows that appellant's initials are printed on each of the lines that precede each warning. Corporal Rodriguez testified that after appellant was advised of all of his rights, he agreed to waive them and provide a written statement.

On cross-examination, Corporal Rodriguez explained that Corporal Casas read the *Miranda* warnings (that appear on exhibit fifty-two) to appellant in Spanish. He testified appellant "read the bottom portion [of exhibit fifty-two] himself saying that the portion that indicates that he understood the [*Miranda*] rights and he was willing to talk to us."

Corporal Casas testified he read appellant all of the *Miranda* warnings from exhibit fifty-two. Afterwards, he gave exhibit fifty-two to appellant, who "started reading them on his own." Corporal Casas stated appellant "really concentrated on what he was reading. He was being very careful." When defense counsel asked him, "Do you recall indicating . . . where he [appellant] could sign to indicate that you had read these rights to him?", he said, "Yes, I did. Because what I do, I read right where it says . . . 'Su firma significa que entiende los derechos.' And I tell him this signature signifies that you understood these

---

[2] The trial court admitted State's exhibit fifty-two into evidence during the suppression hearing.

rights."  Appellant signed exhibit fifty-two.  When defense counsel asked Corporal Casas, "[D]id he [appellant] indicate to you not only that he had read them [*Miranda* warnings], but that he had understood them?", he said, "Yes. . . .  He acknowledged that he understood them."  When defense counsel asked him, "[D]id he [appellant] initial by each and every one of those Miranda Warnings?", he said, "Yes, he did."  When asked, "[A]fter the defendant was read his Miranda Warnings and indicated that he understood them, did he then waive each and every one of those rights?", he said, "Correct.  Yes."

After hearing argument from both sides, the trial court denied the motion to suppress appellant's written statement.  The trial judge orally pronounced his findings of fact and conclusions of law.

## II.  DISCUSSION

In his sole issue for review, appellant contends the trial court erred by refusing to suppress his written statement because he did not make a knowing, intelligent, and voluntary waiver of his rights under the Fifth Amendment to the United States Constitution, Article 1, Sections 9, 10, and 19 of the Texas Constitution,[3] and Article 38.23 of the Texas Code of Criminal Procedure.[4]  In its findings of fact, the trial court orally pronounced, in relevant part, that appellant, prior to making the written statement,

---

[3] Although appellant complains that his written statement was made in violation of the Texas Constitution, he makes no further arguments regarding what protections the Texas Constitution provides that differ from those of the United States Constitution; therefore we will not address that portion of his issue.  *See* TEX. R. APP. P. 38.1(i); *see also Johnson v. State*, 853 S.W.2d 527, 533 (Tex. Crim. App. 1992) (declining to address appellant's arguments concerning his state-constitutional rights when appellant did not make a distinction between the United States Constitution and the Texas Constitution).

[4] Article 38.23 of the Texas Code of Criminal Procedure provides, in relevant part:  "No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case."  TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (West 2005).

4

received *Miranda* warnings and that those warnings were provided to him in Spanish and in English as found in exhibits fifty-two and fifty-three, respectively. In its conclusions of law, the trial court orally pronounced, in relevant part, that appellant, prior to and during the making of his statement, knowingly, intelligently and voluntarily waived his *Miranda* rights, and the rights set out in the warnings and proceeded to make the statement freely, knowingly, and voluntarily without undue influence, without duress, and without anybody forcing him to do so.

## 1. Standard of Review for Suppression Motions

"When reviewing a trial judge's ruling on a motion to suppress, we view all of the evidence in the light most favorable to the trial judge's ruling." *Gonzales v. State*, 369 S.W.3d 851, 854 (Tex. Crim. App. 2012) (citing *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008)). "When supported by the record, the trial judge's determination of historical facts are afforded almost total deference." *Id*. (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). "Furthermore, 'courts afford the prevailing party the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence.'" *Id*. (quoting *State v. Woodard*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011)). "Almost total deference is afforded to a trial judge's ruling on mixed questions of law and fact that depend upon an evaluation of credibility and demeanor." *Id*. (citing *Guzman*, 955 S.W.2d at 89). "But when mixed questions of law and fact do not depend on evaluation of credibility and demeanor, we review the trial judge's ruling de novo." *Id*. (citing *Guzman*, 955 S.W.2d at 89). "All purely legal questions are reviewed de novo." *Id*. (citing *Woodard*, 341 S.W.3d at 410;

*Kothe v. State*, 152 S.W.3d 54, 62–63 (Tex. Crim. App. 2004).

**2. Whether Corporals Rodriguez and Casas Engaged in Police Overreaching**

A confession is involuntary under the Due Process Clause "only if there was official, coercive conduct of such a nature that any statement obtained thereby was unlikely to have been the product of an essentially free and unconstrained choice by its maker." *Alvarado v. State*, 912 S.W.2d 199, 211 (Tex. Crim. App. 1999). Statements that courts have found involuntary under the Due Process Clause involve the crucial element of police overreaching and involve fact scenarios in which the suspect was subjected to threats, physical abuse, or extended periods of interrogation without rest or nourishment. *See Oursbourn v. State*, 259 S.W.3d 159, 170–71 (Tex. Crim. App. 2008) (collecting cases). Absent coercive police activity, a statement is not involuntary within the meaning of the Due Process Clause even if it was not the product of a meaningful choice by the maker. *Id.* at 170 (citing *Colorado v. Connelly*, 479 U.S. 157 (1986)).

Article 38.22 of the Texas Code of Criminal Procedure is likewise aimed at protecting a suspect from police overreaching. *Id.* at 172. Specifically, Article 38.22, Section 6 provides that only voluntary statements may be admitted in evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 6 (West 2005). This statute works in tandem with Article 38.21 of the Texas Code of Criminal Procedure, which provides that an accused's statement may be used in evidence against him "if it appears that the same was freely and voluntarily made without coercion or persuasion, under the rules hereafter prescribed." *Id.* § 38.21. Claims of involuntariness under these statutes can be, but need not be, predicated on police overreaching of the sort required under due-process

6

analysis. *Oursbourn*, 259 S.W.3d at 172. Under Articles 38.21 and 38.22, Section 6, we may consider, in addition to any allegedly coercive police conduct, factors such as the suspect's youth, intoxication, mental retardation, or other disability that would not raise a federal due process claim. *Id.* at 172–73.

"'Voluntariness' under both constitutional and state law doctrines is to be measured according to the totality of the circumstances.'" *Smith v. State*, 779 S.W.2d 417, 427 (Tex. Crim. App. 1989). In the instant case, Corporal Rodriguez testified that during the interrogation, appellant was "coherent and able to communicate" and was not under the influence of either alcohol or narcotics. He bought appellant "a drink" and some burritos, which appellant ate during the interrogation. State's exhibit fifty-three, which is appellant's written statement, shows that appellant was twenty-two years old at the time he gave the statement. Corporal Rodriguez testified appellant was not denied "any basic necessities" and said that during the interrogation, appellant was offered restroom breaks and took at least one break.

He also testified that during the interrogation, appellant did not ask for an attorney and did not ask to terminate the interview. When asked if appellant was "promised anything, or threatened, coerced" into giving the statement, he said, "No. He was never coerced into anything." He testified appellant was never "directly or indirectly promised anything in exchange for the statement[.]" He testified he removed appellant's handcuffs before the interrogation started. When defense counsel asked Corporal Rodriguez, "And during this whole interview did you have your service weapon on?", he replied, "I was wearing a sports coat . . . with my service weapon." He said that he and Corporal

Casas "were dressed the same way."

Corporal Casas testified appellant never asked to terminate the interview, and he was "given the right to basic necessities such as restroom break, water—things like that[.]" According to Corporal Casas and Corporal Rodriguez, neither promised appellant anything, directly or indirectly, in exchange for his written statement. Corporal Casas testified he never threatened or coerced appellant into giving a statement. He testified appellant was neither handcuffed nor shackled during the interrogation. He said the interrogation lasted from about 9:00 p.m. to shortly before midnight.

Viewing the evidence in the light most favorable to the trial court's finding, we find nothing in this record that could reasonably be considered police overreaching of the sort that would render appellant's statement involuntary in either the due process or the statutory sense. Therefore, we hold appellant's written statement was not the product of police overreaching and the admission of the statement did not violate his due process rights. *See Oursbourn*, 259 S.W.3d at 170, 172–73. Accordingly, the trial court did not abuse its discretion in resolving this issue in favor of the State.

**3. Whether Appellant Knowingly, Intelligently, and Voluntarily Waived His Rights**

Article 38.22 of the Texas Code of Criminal Procedure forbids the use of oral statements made as a result of custodial interrogation unless, *inter alia*, an electronic recording is made of the statement, "*Miranda* warnings are given, and the accused knowingly, intelligently, and voluntarily waives any rights set out in the warnings." *Turner v. State*, 252 S.W.3d 571, 583 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd); *see* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3(a)(1)–(2). An inquiry into the waiver of *Miranda*

8

rights "'has two distinct dimensions.'" *Ripkowski v. State*, 61 S.W.3d 378, 384 (Tex. Crim. App. 2001) (quoting *Colorado v. Spring*, 479 U.S. 564, 573 (1987)). First, the waiver must be "'voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.'" *Id.* (quoting *Spring*, 479 U.S. at 573). Second, the suspect must have made the waiver "'with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it.'" *Id.* (quoting *Spring*, 479 U.S. at 573). The "Constitution does not require that a criminal suspect know and understand every possible consequence of a waiver of the Fifth Amendment privilege." *Spring*, 479 U.S. at 574. It is enough that a "suspect knows that he may choose not to talk to law enforcement officers, to talk only with counsel present, or to discontinue talking at any time." *Id.*

Under Articles 38.21 and 38.22 and their predecessors, fact scenarios that can raise a state-law claim of involuntariness include the following: (1) the suspect was ill and on medication and that fact may have rendered his confession involuntary; (2) the suspect was mentally retarded and may not have knowingly, intelligently and voluntarily waived his rights; (3) the suspect lacked the mental capacity to understand his rights; (4) the suspect was intoxicated, and he "did not know what he was signing"; (5) the suspect was confronted by the brother-in-law of his murder victim and beaten; and (6) "the suspect was returned to the store he broke into 'for questioning by several'" armed persons. *Oursbourn*, 259 S.W.3d at 172–73.

As the sole judge of the credibility of the evidence and witnesses, the trial court had the discretion to believe the testimony of Corporals Rodriguez and Casas that appellant

9

understood his rights and waived them prior to making his written statement. Their testimony established that, before appellant made his written statement, Corporal Casas read him the *Miranda* warnings in Spanish from exhibit fifty-two, and that appellant indicated to Corporals Rodriguez and Casas that he understood his rights. Appellant then proceeded to provide the written statement. The testimony also shows appellant: (1) was coherent; (2) understood what Corporals Rodriguez and Casas were saying to him; (3) was thinking clearly; (4) wanted to talk to both corporals about the murder; (5) was cooperative and not under the influence of either drugs or alcohol; and (6) never asked to speak to an attorney or to terminate the interview. Moreover, the evidence does not show that appellant could not understand his rights because he was ill or on medication, mentally disabled, or lacked the mental capacity to understand his rights. Thus, the record shows appellant knowingly, intelligently, and voluntarily waived his rights. Accordingly, the trial court did not abuse its discretion in concluding appellant knowingly, intelligently, and voluntarily waived his rights prior to making the written statement.

**4. Whether Appellant Waived His *Miranda* Rights**

Appellant argues no waiver of his *Miranda* rights occurred either expressly or implicitly prior to his interrogation, which resulted in him providing a written confession to the police. Article 38.22, Section 2 of the Texas Code of Criminal Procedure provides:

No written statement made by an accused as a result of custodial interrogation is admissible as evidence against him in any criminal proceeding unless it is shown on the face of the statement that:

(a) the accused, prior to making the statement, either received from a magistrate the warning provided in Article 15.17 of this code or received from the person to whom the statement is made a warning that:

(1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;

(2) any statement he makes may be used as evidence against him in court;

(3) he has the right to have a lawyer present to advise him prior to and during any questioning;

(4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and

(5) he has the right to terminate the interview at any time; and

(b) the accused, prior to and during the making of the statement, knowingly, intelligently, and voluntarily waived the rights set out in the warning prescribed by Section (a) of this section.

TEX. CODE CRIM. PROC. ANN. art. 38.22, § 2(a), (b).

## 3. Analysis

Corporal Rodriguez testified that after appellant was advised of all of his rights, he agreed to waive them and provide a written statement. He identified State's exhibit fifty-three as appellant's written statement. The *Miranda* warnings printed in English appear at the top of this exhibit, and appellant's initials appear on each line preceding each warning. Immediately following these warnings, the exhibit states: "You have prior to and during the making of this statement knowingly, intelligently, and voluntarily waived the rights set out in this warning." Appellant's initials appear on the line preceding this phrase. Concerning exhibit fifty-three, the prosecutor asked Corporal

11

Rodriguez the following questions:

Q.     Now with regard to State's Exhibit No. 53, is that the defendant's statement?

A.     Yes, ma'am.   That's the statement that we took from the defendant.

Q.     Now at the top of the statement, also typed and with initials, are those the Miranda warnings again?

A.     It does include the Miranda warnings once again.

Q.     Did the defendant read those to himself or were they read to him?

A.     Yes.   They were read to him.

Q.     And he indicated with his initials he understood?

A.     Yes, sir.

Q.     Is the defendant's signature at the end of that statement?

A.     That is correct.

Even assuming appellant failed to expressly waive his rights, we find he implicitly waived them.   In *Leza v. State*, the court of criminal appeals stated "we have consistently held that waiver of Article 38.22 rights 'may be inferred from actions and words of the person interrogated.'"   351 S.W.3d 344, 353 (Tex. Crim. App. 2011) (quoting *Barfield v. State*, 784 S.W.2d 38, 41 (Tex. Crim. App. 1989)); *see also Etheridge v. State*, 903 S.W.2d 1, 16–17 (Tex. Crim. App. 1994) (expressly declining to overrule *Barfield*, and finding an implied waiver when the accused was informed of his rights, declared he understood them, and agreed to continue with questioning); *Rocha v. State*, 16 S.W.3d 1, 12 (Tex. Crim. App. 2000) (following *Etheridge*).   In *Leza*, the court of criminal appeals explained that "[w]hile we have also said that such implied waivers are not to be

12

preferred,[5] we have acknowledged that it is within a trial court's discretion to rely upon an implied waiver whenever the totality of the circumstances, as reflected by the recording of the oral statement, supports it."  *Leza*, 351 S.W.3d at 353 (citing *Joseph v. State*, 309 S.W.3d 20, 25–26 n.7 (Tex. Crim. App. 2010)).  "This construction of the statute, although it has been criticized by some,[6] has the virtue of being consistent with the [United States] Supreme Court's most recent pronouncement with respect to what may serve to constitute an implied waiver of the Fifth Amendment right to remain silent." *Id.* at 353–54 (citing *Berghuis v. Thompkins*, 130 S.Ct. 2250 (2010) (stating when "the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent").

In the instant case, the totality of the circumstances show appellant:  (1) placed his initials next to each of the rights and warnings required by article 38.22, section 2(a); and (2) placed his initials next to the statement, which read:  "You have prior to and during the making of this statement knowingly, intelligently, and voluntarily waived the rights set out in this warning."  In addition, when the prosecutor asked Corporal Rodriguez, "Did the defendant indicate to you that he understood each of these rights [contained in exhibit fifty-two]?", he said, "He understood his rights.  He stated that he

---

[5] *Watson v. State*, 762 S.W.2d 591, 601 (Tex. Crim. App. 1988).

[6] *See, e.g.*, George E. Dix & John M. Schmolesky, 41 TEXAS PRACTICE:  CRIMINAL PRACTICE AND PROCEDURE § 16;96 (3d ed. 2011), at 136–7 (observing that our case law "assumes that the rule that waiver may be implied means that an implied waiver is proved by evidence that the accused was admonished of his rights and then made the statement without affirmatively demanding that those rights be respected.  This simply cannot be the case.  At a bare minimum, an implied waiver . . . should require that the accused, after being admonished . . . was asked in substance whether he nevertheless was willing to submit to questioning or to discuss the matter with the officer").

did." When asked how appellant indicated he understood all of his rights, Corporal Rodriguez said, "[T]he interview was taken by both Corporal Casas and I. We read the rights one by one while I was there. He also acknowledged the rights, and understood the rights by signing at the bottom of the Miranda Rights Form." When the prosecutor asked him, "Was there any question in your mind as to whether the defendant understood his rights?", he said, "No. He understood perfectly." After receiving the *Miranda* rights in both Spanish (exhibit fifty-two) and in English (exhibit fifty-three), appellant proceeded without hesitation to give the written statement.

Given the totality of the circumstances, we find that appellant waived his rights and that he knowingly, intelligently, and voluntarily waived his rights as required by article 38.22. *See Turner*, 252 S.W.3d at 583 (holding defendant validly waived his rights when he understood his rights and proceeded to answer questions); *Hargrove v. State*, 162 S.W.3d 313, 318-19 (Tex. App.—Fort Worth 2005, pet. ref'd) (finding accused validly waived rights despite lack of explicit waiver); *State v. Oliver*, 29 S.W.3d 190, 193 (Tex. App.—San Antonio 2000, pet. ref'd) (finding that, despite lack of explicit waiver, accused knowingly, intelligently, and voluntarily made a statement after reading his rights, indicating he understood them, and proceeding without hesitation to discuss circumstances surrounding the murder). Such an implicit waiver is valid under article 38.22 and under the United States and Texas Constitutions. *Turner*, 252 S.W.3d at 583–84. We hold the trial court did not err by denying the motion to suppress appellant's written statement. We overrule appellant's sole issue for review.

14

### III. CONCLUSION

We affirm the judgment of the trial court.

ROSE VELA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
4th day of October, 2012.