

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

### NO. PD-0828-10

---

### THE STATE OF TEXAS

### v.

### DAVID WAYNE WOODARD, Appellee

---

### ON APPELLEE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SECOND COURT OF APPEALS
### WICHITA COUNTY

---

**KEASLER, J., delivered the opinion of the court in which PRICE, WOMACK, JOHNSON, HERVEY, and COCHRAN, JJ., joined. KELLER, P.J., filed a dissenting opinion in which MEYERS, J., joined.**

### O P I N I O N

The court of appeals correctly held that the initial interaction on the sidewalk between

David Wayne Woodard and Officer John Warner, Jr., which began with Officer Warner

asking Woodard if he had been involved in a reported accident, was a consensual encounter.[1]

Further, we conclude that the encounter, which eventually escalated into Woodard's arrest

---

[1]  *See State v. Woodard*, 314 S.W.3d 86, 97-98 (Tex. App.—Fort Worth 2010).

for DWI, was supported by probable cause. The court of appeals's judgment is therefore affirmed.

## I. Background

Woodard drove his car off the road into a ditch and then abandoned it by walking away. Woodard filed a pretrial motion to suppress, claiming that his warrantless arrest for driving while intoxicated (DWI), about a quarter of a mile from the accident, was unlawful. The trial judge held a suppression hearing. Officers Donald Morgan and Warner testified about the events leading up to Woodard's arrest.

Around 10 p.m. on May 17, 2008, the Burkburnett Police Department dispatcher received a call from an anonymous tipster reporting a single-car accident at the intersection of Oklahoma and North Berry Street. The dispatcher relayed the information to officers. Officers Morgan and Warner headed to the accident scene in separate patrol vehicles.

While Officer Warner was on his way to the reported accident scene, the dispatcher advised that the tipster reported that the driver was leaving the scene of the accident and was wearing a black T-shirt and jeans. The driver was last seen at Berry and Third Street. Officer Warner decided to head in that direction while en route to the accident scene. Officer Warner spotted Woodard walking on a sidewalk on Berry Street, about six to eight blocks from the accident. Woodward was the only person walking on Berry Street, and he matched the broad description relayed by the dispatcher. Officer Warner had a "hunch" that Woodard had been the person involved in the accident, even though Woodard did not appear to have

any injuries. Nor did Officer Warner observe Woodard behaving illegally, endangering himself or others, or breaching the peace. Officer Warner immediately asked Woodard if he had been involved in an accident at Oklahoma and North Berry Street. Woodard said, "Yes" and "I'm drunk and should not have been driving." Officer Warner detected the odor of alcohol on Woodard's body and breath. Woodard's eyes were bloodshot and glazed; he was unsteady on his feet and staggered when he walked.

During this time, Officer Morgan had arrived at the accident scene. He observed an unoccupied green automobile with front-end damage in a ditch. Officer Morgan believed that the accident may have injured the vehicle's occupants. Officer Morgan did not know who drove the vehicle, the number of occupants in the vehicle, or when the accident occurred. Because the police department's standard procedure upon finding a wrecked, unoccupied vehicle is to "try to find out who the driver [was] in case we need to get [him or her] medical attention," Officer Morgan opened the driver's-side door and attempted to find an insurance card, driver's license, or other identifying information. Officer Morgan found an insurance card and discovered two beer cans by the driver's seat; one can was empty and the other was about a quarter full and cold to the touch. Officer Morgan did not know when the beer had been consumed. After calling a tow truck to remove the vehicle, Officer Morgan informed Officer Warner that he had found alcoholic beverages in the vehicle.

Because Officer Warner suspected that Woodard was intoxicated and that he had been driving the now-wrecked car while intoxicated, he asked Woodard to perform the

standardized field sobriety tests. Based on Woodard's performance on the tests, Officer Warner concluded that Woodard was intoxicated. Officer Warner asked Woodard if he would be willing to take a breath test, and Woodard said that he would. Officer Warner then arrested Woodard. Woodard was later charged with misdemeanor DWI.

At the close of the hearing, the trial judge granted Woodard's suppression motion. The judge rejected the State's argument that the initial interaction between Officer Warner and Woodard was a consensual encounter, outside of the protections of the Fourth Amendment, and that Officer Warner subsequently lawfully detained and arrested Woodard. At the State's request, the trial judge entered written findings of fact and conclusions of law. In doing so, the judge adopted Woodard's proposed findings and conclusions in toto and added an additional conclusion of law.

Among other things, the trial judge found that Officer Warner arrested Woodard without a warrant. When Officer Warner first spotted Woodard, he did not observe Woodard committing a criminal offense, like public intoxication or breach of the peace, and Woodard was not acting in a manner that would indicate that Woodard was a danger to others or himself. Officer Warner did not observe Woodard "commit any offense within his view." Additionally, Officer Warner had no personal knowledge that Woodard had been driving while intoxicated "before he decided to detain" him. The trial judge also found that Officer Warner "performed an investigative detention of . . . Woodard . . . because he had a hunch based upon very vague information provided by an anonymous tipster who lacked

credibility." Officer Warner did not arrest Woodard based on an "admissible statement which established probable cause to believe Woodard committed a felony."

Additionally, among other things, the trial judge concluded that the uncorroborated anonymous tip was not sufficient to provide Officer Warner with reasonable suspicion to detain Woodard. The trial judge also concluded that Officer Warner did not articulate specific facts to support a reasonable suspicion that Woodard committed a criminal offense before he detained Woodard. No officer observed Woodard operating a motor vehicle while intoxicated. And Officer Warner did not have probable cause to arrest Woodard for public intoxication, which requires the intoxicated person to endanger himself or herself or another. The interaction between Officer Warner and Woodard, according to the trial judge, was not a consensual encounter because a reasonable person in Woodard's situation would not have felt free to leave when Officer Warner stopped him.

## II. Court of Appeals and Woodard's Petition for Discretionary Review

The State appealed the trial judge's ruling, arguing that when Officer Warner initially approached Woodard, it was a consensual encounter and that Officer Warner was therefore permitted to ask Woodard questions without reasonable suspicion that Woodard committed a crime.[2] With one Justice dissenting, the Fort Worth Court of Appeals reversed the trial judge's ruling, concluding that the judge erroneously applied the law to the facts.[3] The court

---

[2] *Id.* at 94.

[3] *Id.* at 94-99.

determined that the initial interaction was a consensual encounter; Officer Warner merely "engaged [Woodard] in conversation."[4] The trial judge erred in finding that a reasonable person in Woodard's position would not have believed that he was free to leave because there is no evidence to support that finding.[5]

> The record is devoid of a threatening presence of numerous officers around [Woodard], Officer Warner's display of any weapon, any physical touching of [Woodard] by Officer Warner, Officer Warner's words or tone of voice indicating that compliance with his requests might be compelled, or flashing lights or blocking [Woodard's] path. No evidence indicates that Officer Warner's mere approach interfered with [Woodard's] freedom of movement or caused inconvenience and loss of time, nor that the officer's initial questioning constituted an unconstitutional seizure.[6]

The interaction then escalated into a lawful investigative detention when Officer Warner administered the field sobriety tests, and this was only after Officer Warner had reasonable suspicion to believe that Woodard had been driving drunk.[7] Then Officer Warner lawfully arrested Woodard based on probable cause following Woodard's performance on the tests.[8] The court rejected Woodard's argument that his arrest for DWI was unlawful because Officer Warner did not actually witness Woodard driving while intoxicated as

---

[4] *Id.* at 94.

[5] *Id.* at 95.

[6] *Id.*

[7] *Id.* at 96.

[8] *Id.*

required by Texas Code of Criminal Procedure Article 14.01(b).[9] Article 14.01(b) provides that a peace officer may effectuate a warrantless arrest for an offense committed "in his presence or in his view."[10] Taking into account the information known to Officer Warner before he arrested Woodard, the court held that Officer Warner had sufficient information to believe that Woodard had committed the offense of DWI.[11]

The dissent accused the majority of improperly substituting its judgment for that of the trial judge.[12] The dissent opined that the case was controlled, in part, by Article 14.01(b), and since no officer observed Woodard commit an offense, the arrest was unlawful.[13] The anonymous tip about the car in the ditch did not satisfy Article 14.01(b)'s requirement that an officer personally view the commission of a misdemeanor offense to justify a warrantless arrest.[14] The dissent also faulted the majority for citing cases in which the police wrongfully arrested the person for DWI but the arrest was nevertheless held to be lawful because the facts supported an arrest for public intoxication.[15] The dissent maintained that the State procedurally defaulted that argument and that the trial judge entered a contrary finding based

[9] *Id.* at 97.

[10] TEX. CODE CRIM. PROC. ANN. art. 14.01(b) (Vernon 2005).

[11] *Woodard*, 314 S.W.3d at 98-99.

[12] *Id.* at 99-100 (Dauphinot, J., dissenting).

[13] *Id.* at 100-01.

[14] *Id.* at 101.

[15] *Id.*

on Officer Warner's testimony.[16]  The dissent also asserted that the majority improperly shifted the burden to Woodard when it determined that there is no evidence in the record to disprove that the encounter was consensual.[17]  The State, the dissent admonished, had the burden to prove that the arrest was lawful.[18]

Adopting the dissent's view, Woodard petitioned us for review, which we granted.

### III.  Discussion

### A.  Standard of Review for Suppression Motions

When reviewing a trial judge's ruling on a suppression motion, the trial judge's determination of facts are afforded almost total deference, provided that those determinations are supported by the record.[19]  As a general rule, appellate courts view the evidence in the light most favorable to the trial judge's ruling,[20] regardless of whether the judge granted or denied the suppression motion.[21]  Thus, courts afford the prevailing party "the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that

---

[16]  *Id.*

[17]  *Id.* at 102-03.

[18]  *Id.*

[19]  *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

[20]  *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008) (citing *Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007)).

[21]  *Id.* at 241.

evidence."[22] And when reviewing mixed questions of law and fact, courts afford great deference to the trial judge's rulings, provided that those rulings depend upon evaluations of credibility and demeanor.[23] But when credibility and demeanor were irrelevant, courts conduct a de novo review.[24] All purely legal questions are reviewed de novo.[25]

## B. The Fourth Amendment

Law enforcement and citizens engage in three distinct types of interactions: (1) consensual encounters;[26] (2) investigatory detentions;[27] and (3) arrests.[28]

Consensual police-citizen encounters do not implicate Fourth Amendment protections.[29] Law enforcement is free to stop and question a fellow citizen;[30] no justification is required for an officer to request information from a citizen.[31] And citizens may, at will,

---

[22] *Id.*

[23] *Guzman*, 955 S.W.2d at 89.

[24] *Kothe v. State*, 152 S.W.3d 54, 62-63 (Tex. Crim. App. 2004).

[25] *Id.*

[26] *Florida v. Bostick*, 501 U.S. 429, 434 (1991).

[27] *Terry v. Ohio*, 392 U.S. 1, 30-31 (1968).

[28] *Gerstein v. Pugh*, 420 U.S. 103, 111-12 (1975).

[29] *Bostick*, 501 U.S. at 434; *see Florida v. Rodriguez*, 469 U.S. 1, 5-6 (1984).

[30] *Bostick*, 501 U.S. at 434-35.

[31] *Hiibel v. Sixth Judicial District Court of Nevada*, 542 U.S. 177, 185 (2004)

terminate consensual encounters.[32] Even when the officer did not communicate to the citizen that the request for information may be ignored, the citizen's acquiescence to an official's request does not cause the encounter to lose its consensual nature.[33] Courts consider the totality of the circumstances surrounding the interaction to determine whether a reasonable person in the defendant's shoes would have felt free to ignore the request or terminate the interaction.[34] If it was an option to ignore the request or terminate the interaction, then a Fourth Amendment seizure has not occurred.[35] The surrounding circumstances, including time and place, are taken into account, but the officer's conduct is the most important factor when deciding whether an interaction was consensual or a Fourth Amendment seizure.[36]

No bright-line rule governs when a consensual encounter becomes a seizure.[37] Generally, however, when an officer through force or a showing of authority restrains a citizen's liberty, the encounter is no longer consensual.[38] This is the point at which an encounter becomes a detention or arrest, both of which are seizures under the Fourth

---

[32] *Crain v. State*, 315 S.W.3d 43, 49 (Tex. Crim. App. 2010).

[33] *Immigration and Naturalization Service v. Delgado*, 466 U.S. 210, 216 (1984).

[34] *Brendlin v. California*, 551 U.S. 249, 255 (2007)

[35] *Id.*

[36] *Garcia-Cantu*, 253 S.W.3d at 244.

[37] *Brendlin*, 551 U.S. at 255.

[38] *Id.* at 254.

Amendment.[39]   Thus, Fourth Amendment scrutiny becomes necessary.[40]   When there is a detention, courts must decide whether the detaining officer had reasonable suspicion that the citizen is, has been, or soon will be, engaged in criminal activity.[41]   When there is a warrantless arrest, courts must determine whether the arresting officer had probable cause to believe the same.[42]   The State bears the burden of producing specific articulable facts showing reasonable suspicion and probable cause.[43]   To meet its burden, the State may present the specific facts known to the officer at the moment the seizure occurred.[44]   In making this determination, courts use "commonsense judgments and inferences about human behavior."[45]

When a defendant asserts a search and seizure violation under the Fourth Amendment, the defendant bears the burden of producing evidence to rebut the presumption of proper

---

[39] *Crain*, 315 S.W.3d at 49.

[40] *Bostick*, 501 U.S. at 434.

[41] *Rodriguez*, 469 U.S. at 5.

[42] *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).

[43] *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009); *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001).

[44] *Amador*, 275 S.W.3d at 878; *Davis v. State*, 947 S.W.2d 240, 243 (Tex. Crim. App. 1997).

[45] *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000); *see also Williams v. State*, 621 S.W.2d 609, 612-13 (Tex. Crim. App. 1981).

conduct by law enforcement.[46] A defendant can satisfy this burden with evidence that the seizure occurred without a warrant.[47] If the defendant satisfies the initial burden, the burden then shifts to the State to establish that the seizure was nevertheless reasonable under the applicable standard—either reasonable suspicion or probable cause.[48]

## C. Texas Warrantless Arrest Requirement

Under Article 14.01(b), "A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view."[49] Probable cause for a warrantless arrest under Article 14.01(b) "may be based on [an officer's] prior knowledge and personal observations . . . . [A]n officer may rely on reasonably trustworthy information provided by another person in making the overall probable cause determination."[50] Thus, all of the information to support probable cause does not have to be within an officer's personal knowledge.[51] The ultimate question under Article 14.01(b) is "'whether at that moment the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent man in believing that

---

[46] *Amador*, 275 S.W.3d at 878.

[47] *Id.*

[48] *Id.*

[49] TEX. CODE CRIM. PROC. ANN. art. 14.01(b).

[50] *Beverly v. State*, 792 S.W.2d 103, 105 (Tex. Crim. App. 1990).

[51] *Id.*

the arrested person had committed or was committing an offense.'"[52]

### D. Analysis

We conclude that there is nothing defective or flawed about the court of appeals's analysis and resolution.

Giving proper deference to the trial judge's factfindings, summarized below, we hold that the initial interaction between Officer Warner and Woodard is properly designated as a consensual encounter. On the way to investigate a tipster's report about a single-vehicle accident, Officer Warner saw Woodard walking alone on a sidewalk approximately a quarter of a mile from the reported accident. Officer Warner had a "hunch" that Woodard was somehow involved in the reported accident based on a tipster's vague description of the driver's clothing. Officer Warner had no information from which he could conclude that the tipster was either credible or reliable and had no personal knowledge as to whether there was in fact an accident. Officer Warner did not observe Woodard committing an offense while he was walking down the sidewalk in what the trial judge identified as a non-suspicious location. Officer Warner stopped Woodard and asked him if he had indeed been involved in the reported accident.

Officer Warner did not need any information about Woodard to justify the stop and

---

[52] *Steelman v. State*, 93 S.W.3d 102, 107 (Tex. Crim. App. 2002) (quoting *Beverly*, 792 S.W.2d at 105).

inquiry.[53] The lack of specific, credible, and verifiable information about the accident and the driver originating from the anonymous tipster and Officer Warner's lack of personal knowledge concerning the commission of an offense by Woodard are red herrings. The trial judge erred to consider these circumstances when concluding that the initial interaction was not a consensual encounter; they were immaterial. Even without the advance information about the accident and driver, Officer Warner was free to stop, approach, and question Woodard.

Woodard argues that the trial judge's findings support a contrary determination. The trial judge, Woodard notes, found that a reasonable person in Woodard's shoes would not have felt free to leave when Officer Warner stopped him. Woodard maintains that the trial judge made a credibility determination in his favor based on Officer Warner's testimony that he "stopped" Woodard. Woodard also criticizes the court of appeals for improperly placing the burden on Woodard. To prove that the initial interaction constituted a consensual encounter, the State, to satisfy its burden, should have questioned Officer Warner about the details surrounding the interaction. For example, the State should have asked Warner whether he was in uniform, exhibited a weapon, activated the patrol car's siren and lights; whether he requested or demanded information; whether he used a conversational tone or touched Woodard; whether other officers were present.

We begin with Woodard's burden-shifting argument. Until Woodard established that

---

[53] *See Bostick*, 501 U.S. at 434; *see also Florida v. Royer*, 460 U.S. 491, 497 (1983).

he was seized without a warrant, he retained the burden; without proof of a seizure the burden did not shift. And at this point, for the reasons stated above, Woodard failed to show that he was seized when Officer Warner stopped him to ask about the reported accident.[54] That the trial judge concluded that the initial interaction was a detention and stated that a reasonable person in Woodard's shoes would not have felt free to leave is not supported by the record. This was a legal conclusion made by the trial judge without the necessary supporting facts. A "stop" to make an inquiry, on its own, does not show a seizure.[55] "In the absence of . . . evidence [typically associated with the seizure of a person—like the display of a weapon, physical touching, or the threatening presence of several officers], otherwise offensive contact between a member of the public and police cannot, as a matter of law, amount to a seizure of that person."[56] Woodard did not defeat the presumption of proper police conduct.[57] So giving due deference to all of the trial judge's findings, we conclude, as the court of appeals did, that the trial judge applied the law incorrectly to the facts.

---

[54] *See e.g., Russell v. State*, 717 S.W.2d 7, 10 (Tex. Crim. App. 1986) (because the defendant failed to prove that she was arrested, the court of appeals erred to hold that her consent to search was tainted by an illegal arrest).

[55] *Compare with State v. Castleberry*, No. PD-0354-10, 2011 Tex. Crim. App. LEXIS 283, at *15-16 (Tex. Crim. App. Mar. 2, 2011) (consensual encounter); *Crain*, 315 S.W.3d at 52 (detention).

[56] *United States v. Mendenhall*, 446 U.S. 544, 554 (1980).

[57] *Russell*, 717 S.W.2d at 9 ("a defendant must produce evidence that defeats the presumption of proper police conduct and therefore shifts the burden of proof to the State.").

The trial judge and Woodard analyzed this case under a faulty premise. With the error now remedied, Woodard's complaint that Officer Warner lacked personal knowledge, or reasonably trustworthy information, that Woodard committed the offense of DWI, as required by Article 14.01(b), becomes an academic exercise. Woodard, in response to Officer Warner's query, voluntarily confirmed his involvement in the accident and then confessed to driving while intoxicated when he stated that he was drunk and should not have been driving. Officer Warner noticed that Woodard smelled of alcohol, staggered when he walked, and had blood shot, glazed eyes. Then, Officer Morgan informed Officer Warner that he discovered alcoholic beverages in the car.

Arguably, the totality of this information, obtained first-hand and through a trustworthy source, provided Officer Warner with probable cause to arrest Woodard for DWI. But following the court of appeals's analysis, we agree that the information certainly provided Officer Warner with reasonable suspicion to detain Woodard and administer the field sobriety tests. Woodard's performance on the tests, as well as the information obtained during the preceding interaction, undoubtedly provided Officer Warner with probable cause to believe that Woodard had driven the now-wrecked car while intoxicated. So either way this case is viewed, Article 14.01(b) was not violated. Additionally, the State satisfied its burden of showing that Woodard's arrest was reasonable under the Fourth Amendment.

Finally, consistent with the dissent in the court of appeals, Woodard argues that the majority erred to rely on cases validating an arrest under a theory of public intoxication when

the facts fall short of supporting probable cause for a DWI arrest.[58] Woodard complains that the State procedurally defaulted this legal theory[59] and contends that it conflicts with the trial judge's finding that Woodard did not appear intoxicated and to be a danger to himself or another. The court of appeals never opined on that theory. The citations appear to be mere surplusage. The court of appeals, as explained above, reversed the trial judge's ruling based on the fact that the initial interaction constituted a consensual encounter, culminating in Woodard's arrest for DWI, which was supported by probable cause.[60]

## IV. Conclusion

The court of appeals correctly relied on the State's consensual encounter theory to reverse the trial courts's granting of Woodard's suppression motion, and the State sustained its burden of proving probable cause to support Woodard's arrest. We therefore affirm the court of appeals's judgment.

DATE DELIVERED: April 6, 2011
PUBLISH

---

[58] *See Woodard*, 314 S.W.3d at 98 n.6 (citing *Kelly v. State*, No. 02-06-339-CR, 2008 Tex. App. LEXIS 202 (Tex. App.—Fort Worth, Jan. 10, 2008); *Reynolds v. State*, 902 S.W.2d 558, 560 (Tex. App.—Houston [1st Dist.] 1995)).

[59] *See Steelman*, 93 S.W.3d at 106-07.

[60] *Woodard*, 314 S.W.3d at 97-98.