**Affirmed and Memorandum Opinion filed June 19, 2014.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-13-00097-CR

_____

**TARA RENEE OCHOA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Criminal Court at Law No. 13
Harris County, Texas
Trial Court Cause No. 1815730**

## M E M O R A N D U M   O P I N I O N

In a single issue, appellant Tara Renee Ochoa contends the trial court abused its discretion in denying her motion to suppress evidence obtained as a result of an allegedly unlawful detention. After appellant's motion was denied, she pleaded guilty to driving while intoxicated pursuant to a plea bargain with the State.[1] The

---

[1] Appellant did not waive her right to appeal the trial court's ruling on the motion to suppress.

trial court sentenced appellant to confinement for one year, suspended her confinement, and placed her on community supervision for eighteen months. We affirm.

## *Background*

At the hearing on appellant's motion to suppress, two officers of the City of Webster Police Department testified to the following events. Before midnight on March 15, 2012, they were dispatched to respond to a single-car accident. The dispatcher did not provide any information about any individuals involved in the accident. The officers headed to the accident scene in separate marked police vehicles.

Officer Thomas arrived first and observed the car had struck and become lodged on a "meter reader pole" in a ditch. The engine was not running, but the keys were inside the vehicle. Thomas noted the accident scene was "pretty fresh," as there was a burning smell due to possible fluid transfer or air bag deployment. Thomas ran the license plate of the vehicle and determined it was registered to appellant.

As Thomas investigated the wrecked car, Officer Edge "began checking the surrounding areas for any possible involved parties." He did not have any description or knowledge of who was involved in the accident. As he was driving down the frontage road, Edge noticed two women—later identified as appellant and her sister—sitting on a curb in a nearby movie theatre parking lot about 200 to 300 feet from the scene of the accident. They were crying. The large parking lot was nearly abandoned, and the women "seemed out of place . . . sitting there." Edge radioed Thomas, approached the women in his patrol car, and asked "if they were involved with the vehicle that was abandoned." They immediately responded that they owned the car and appellant had been the driver.

2

Edge then exited his vehicle. "[B]ased upon general indicators and [his] training and experience," Edge concluded both women possibly were intoxicated. At that point, Edge determined that the sisters were not free to leave and he would have followed them had they attempted to do so because it would not have been safe for them to leave in an intoxicated state. Edge did not communicate to the sisters that they were not free to leave or place them in handcuffs.

Thomas arrived at the parking lot location less than a minute after Edge had begun talking to the women. Thomas noticed both women had alcohol on their breath. From that point, the officers separated the women to "piece together [their] investigation" and "compare . . . stories."[2] Appellant admitted to Thomas that "she was driving the vehicle . . . from a bar named Big Texas . . . where she had consumed alcohol." Appellant's sister confirmed this information. She admitted appellant was driving the vehicle when they wrecked and thereafter walked away from the scene because they were scared and did not know what to do.

Thomas conducted the horizontal gaze nystagmus field sobriety test on appellant in the parking lot and observed six clues of intoxication. Thomas subsequently transported appellant to the "intox room" at the police station, performed other sobriety tests on her, and later arrested her without a warrant.

After the hearing on the motion to suppress, the trial judge entered written findings of fact and conclusions of law and concluded, among other things, that Edge's initial encounter with appellant and her sister was a consensual encounter and that Edge learned enough during that encounter to reasonably believe that appellant was the driver of the vehicle involved in the accident and that she was possibly intoxicated. The trial court further concluded Edge's reasonable belief

---

[2] Neither officer advised appellant of her *Miranda* rights before questioning her. *See Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966).

was sufficient to justify an investigative detention and that statements made by appellant to Thomas during the detention were admissible.

## *Discussion*

In her sole issue, appellant challenges the trial court's conclusions that her interaction with Edge was a consensual encounter during which he developed reasonable suspicion to justify an investigative detention.[3] She contends the encounter was an unlawful detention in violation of her constitutional right against unreasonable seizures.

The United States and Texas Constitutions protect citizens from unreasonable seizures by government officials. U.S. Const. Amend. IV; Tex. Const. art. 1, § 9.[4] There are three distinct types of police-citizen interactions: (1) consensual encounters that do not implicate the Fourth Amendment; (2) investigative detentions that are Fourth Amendment seizures of limited scope and duration that must be supported by a reasonable suspicion of criminal activity; and (3) arrests, the most intrusive of Fourth Amendment seizures, that are reasonable only if supported by probable cause. *Wade v. State*, 422 S.W.3d 661, 667 (Tex. Crim. App. 2013).

When reviewing a trial court's ruling on a motion to suppress, we apply an abuse of discretion standard and overturn the trial court's ruling only if it is outside the zone of reasonable disagreement. *Martinez v. State*, 348 S.W.3d 919, 922

---

[3] Appellant also argues the State cannot justify the detention as the result of a "welfare check" under the community-caretaking exception to the Fourth Amendment. *See Corbin v. State*, 85 S.W.3d 272, 276 (Tex. Crim. App. 2002). Because we conclude the detention was properly made based upon reasonable suspicion, we need not address whether the community-caretaking doctrine applied.

[4] Appellant does not argue that the Texas Constitution provides more protection than the Fourth Amendment, so we analyze this issue only under the Fourth Amendment. *See Flores v. State*, 319 S.W.3d 697, 702 n.8 (Tex. Crim. App. 2010).

(Tex. Crim. App. 2011). We view the evidence in the light most favorable to the trial court's ruling. *Johnson v. State*, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013). When, as here, the trial judge makes explicit findings of fact, we determine whether the evidence, viewed in the light most favorable to the trial court's ruling, supports these fact findings. *See id.* We grant almost total deference to the trial judge's determinations of historical facts and mixed questions of law and fact that rely on credibility. *Id.* But when mixed questions of law and fact do not depend on the evaluation of credibility and demeanor, we review the trial judge's ruling de novo. *Id.* In this connection, the determination of whether a given set of historical facts amount to a consensual police-citizen encounter or a detention under the Fourth Amendment is subject to a de novo review because it is an issue of law. *Id.* Similarly, we review de novo whether a casual encounter has evolved into a detention. *See Wade*, 422 S.W.3d at 668.

## I. The initial contact with appellant and her sister was a consensual encounter.

Police officers are as free as any other citizen to approach citizens to ask for information or cooperation. *Id.* at 667. No bright-line rule governs when a consensual encounter becomes a detention. *Id.* We take into account the totality of the circumstances of the surrounding encounter to determine whether a reasonable person would have felt free to ignore a police officer's requests or terminate the encounter and go about her business. *See id.* Similarly, neither a police officer's failure to inform a citizen that the officer's request for information may be ignored nor a citizen's compliance with such request negates the consensual nature of an encounter. *State v. Woodard*, 341 S.W.3d 404, 411 (Tex. Crim. App. 2011). A Fourth Amendment seizure does not occur if there is an option to ignore the request or terminate the encounter. *Id.* The surrounding circumstances, including time and place, are taken into account, but the officer's

5

conduct is the most important factor when deciding whether an interaction was consensual or a Fourth Amendment seizure. *Id*.

We conclude the trial court's characterization of Edge's initial approach to appellant and her sister as a consensual encounter was correct. Edge located the two women during a search of the area near the accident scene for possible involved parties. He approached them because he felt they looked out of place sitting on a curb in a parking lot. Upon approaching, Edge testified he had no idea whether the women were involved in the accident and simply asked from his patrol car if they were involved with the vehicle abandoned on the roadway. They informed Edge they owned the car, appellant had been driving it at the time of the collision, and they had left it behind. Edge was free to stop, approach, and question the women. *See id*. at 411, 413. The fact that they voluntarily confirmed their involvement in the accident does not negate the consensual nature of the encounter. *See id*. at 411.

When Edge began speaking with the women, he determined that they possibly were intoxicated and that it would not have been safe for them to leave; however, he did not inform them they were not free to leave or place them in handcuffs. The record reflects the parking lot was a "[p]retty large area [and] very well-lit," but is silent as to whether Edge's emergency lights were activated upon approach or at any other time during the encounter and whether Edge used a spotlight or flashlight. However, nothing in the record indicates Edge blocked the women from leaving or otherwise terminating the encounter. Further, the trial court's findings reflect that Edge did not use force, threats, or intimidation while engaged in the encounter. In the absence of circumstances or conduct normally associated with a seizure, such as the display of a weapon, physical touching, offensive contact between a citizen and a police officer, the "shining of a 'pretty

6

darn bright' high-beam spotlight onto a person," the use of a "loud authoritative voice," or the threatening presence of several officers, a seizure has not occurred. *See Johnson*, 414 S.W.3d at 193; *see also Woodard*, 341 S.W.3d at 413.

Taking into account the totality of the circumstances, we conclude that the initial encounter between Edge, appellant, and her sister was consensual.

## II.    The officers had reasonable suspicion sufficient to justify a subsequent investigative detention.

The State contends that the consensual encounter evolved into an investigative detention that subsequently led to probable cause to arrest appellant.[5] Generally, when an officer through force or a showing of authority restrains a citizen's liberty, the encounter is no longer consensual. *Woodard*, 341 S.W.3d at 411. At that point, an encounter becomes a detention or arrest, both of which are seizures under the Fourth Amendment. *Id*. To justify an investigative detention, the officer must show reasonable suspicion, which exists if the officer has specific articulable facts that, when combined with rational inferences from those facts, would lead him reasonably to believe that a person was, had been, or soon would be, engaged in criminal activity. *Id.*; *see also State v. Castleberry*, 332 S.W.3d 460, 466 (Tex. Crim. App. 2011).[6] We disregard the actual subjective intent of the arresting officer and look to whether there was an objectively justifiable basis for the detention. *See Wade*, 422 S.W.3d at 668. We apply "commonsense judgment and inferences about human behavior" to determine if the State has met its burden.

---

[5] Appellant does not dispute that the officers eventually acquired probable cause to arrest her. However, she argues that the officers did not have reasonable suspicion to detain her.

[6] When a defendant asserts an illegal detention has occurred under the Fourth Amendment, she bears the initial burden of producing evidence to rebut the presumption of proper conduct by law enforcement. *Woodard*, 341 S.W.3d at 412. She can satisfy this burden with evidence the detention occurred without a warrant, as was the case here. *See id*. The burden then shifts to the State to establish that the detention was nevertheless reasonable. *Id.*

*See Woodard*, 341 S.W.3d at 412.

As in this case, an officer's questioning of a witness during an accident investigation generally is a consensual encounter. *See State v. Rudd*, 255 S.W.3d 293, 298 (Tex. App.—Waco 2008, pet. ref'd) (citing *State v. Stevenson*, 958 S.W.2d 824, 829 (Tex. Crim. App. 1997)). However, the answers provided and the officer's observations may provide reasonable suspicion to believe that a driving while intoxicated offense has occurred, and what began as a consensual encounter may escalate into an investigative detention. *Id.* At that point, the officer may administer field sobriety tests that may lead to probable cause to arrest. *Id.*

As set forth above, during the consensual encounter, appellant and her sister informed Edge that the wrecked car belonged to them. Appellant further admitted that she had been the driver. During this brief conversation, Edge, based upon "general indicators" and his training and experience, suspected appellant was intoxicated. Given appellant's admission that she owned and had been operating the wrecked vehicle, combined with the signs of intoxication observed by Edge, the officers developed reasonable suspicion sufficient to justify detaining appellant to investigate whether she had been driving while intoxicated. *See id.* at 298-300.

We conclude the trial court did not abuse its discretion in denying appellant's motion to suppress. *See Martinez*, 348 S.W.3d at 922. Accordingly, we overrule appellant's sole issue on appeal. We affirm the judgment of the trial court.

/s/    Martha Hill Jamison
Justice

Panel consists of Chief Justice Frost and Justices Jamison and Wise.
Do Not Publish — TEX. R. APP. P. 47.2(b).