# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00319-CV

**Texas Department of Public Safety, Appellant**

**v.**

**Liza Sissac, Appellee**

---

### FROM COUNTY COURT AT LAW NO. 1 OF TRAVIS COUNTY
### NO. C-1-CV-14-000899, HONORABLE J. DAVID PHILLIPS, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

The Texas Department of Public Safety (the Department) appeals from the trial court's judgment reversing the administrative decision authorizing the Department to suspend appellee Liza Sissac's driver's license. An administrative-law judge (ALJ) had previously upheld the suspension based on Sissac's refusal to submit a specimen of breath or blood while under arrest for driving while intoxicated (DWI). *See* Tex. Transp. Code § 724.035 (requiring Department to suspend driver's license of person who is arrested for DWI and refuses to submit sample). The Department asserts that substantial evidence supports the ALJ's findings of fact that Sissac voluntarily approached the first police officer she encountered and that probable cause existed to arrest Sissac. *See id.* § 724.042. For the reasons that follow, we will reverse the trial court's judgment and render judgment affirming the ALJ's decision.

## BACKGROUND

Sissac was arrested for DWI in the early morning hours of June 9, 2013. The record establishes the following undisputed facts: Corporal Jordan of the Austin Police Department observed Sissac drive past a police barricade, prompting him to walk toward her vehicle;[1] as he approached, Sissac parked, exited her vehicle, and voluntarily walked toward Corporal Jordan to ask him a question; a second officer, Officer Bundick, arrived after receiving a call to the scene at 1:17 a.m.;[2] Officer Bundick believed that Sissac was intoxicated based on his personal observations of Sissac's glassy and bloodshot eyes, slurred speech, and the smell of alcohol; Officer Bundick administered field sobriety tests to Sissac, who complied but performed poorly; Sissac exhibited six of six possible clues of intoxication on the horizontal gaze nystagmus test, three of four clues on the one-leg-stand test, and seven of eight clues on the walk-and-turn test; Officer Bundick arrested Sissac for DWI and asked her to provide a specimen of breath or blood; and Sissac refused to provide a sample.

Sissac's refusal subjected her driver's license to a 180-day suspension under the Texas Transportation Code. *See id.* § 724.035(a)(1). Sissac requested an administrative hearing regarding the suspension. *See id.* § 724.041(a). At the hearing, Officer Bundick's affidavit and its incorporated documents were admitted into evidence with no objection. Sissac submitted no evidence, and no witnesses testified at the hearing. Sissac urged the ALJ not to authorize suspension

---

[1] Sissac has not disputed that she drove past the police barricade. Nothing in the record indicates whether she was charged or received a citation for driving past the barricade.

[2] No evidence was presented to indicate how much time passed between when Sissac approached Corporal Jordan and when Officer Bundick arrived on the scene.

of her driver's license because Corporal Jordan lacked the required reasonable suspicion or probable cause to detain her until Officer Bundick arrived and conducted field sobriety tests. *See id.* § 724.042(1) (issues to be addressed at license-suspension hearing include whether "reasonable suspicion or probable cause existed to stop or arrest the person"). The Department argued that Corporal Jordan never detained Sissac and that Officer Bundick's personal observations and the field sobriety test results gave Officer Bundick the required probable cause to detain and arrest Sissac for DWI. Alternatively, the Department argued that Corporal Jordan had reasonable suspicion or probable cause to detain Sissac because she passed through a police barricade.

After the hearing, the ALJ sustained the suspension of Sissac's license. The ALJ's decision included the following findings of fact:

1) On June 9, 2013, Austin Police Department Cpl Jordan observed Defendant pass a police barricade and park her vehicle. As Cpl Jordan was walking toward Defendant's vehicle, she exited and voluntarily approached Cpl Jordan to ask him a question.

2) Defendant had a strong odor of alcoholic beverage on her breath.

3) Officer Jon Bundick conducted a DWI investigation of Defendant.

4) On the same date, probable cause to arrest the Defendant existed in that there was probable cause to believe that Defendant was operating a motor vehicle in a public place while intoxicated because in addition to the facts in No. 1, and 2, the officer observed that Defendant: had bloodshot and glassy eyes; swayed, staggered, and stumbled; on the walk-and-turn test, the Defendant lost balance during instructions, began too soon, did not touch heel to toe, used arms for balance, made an improper turn, stepped off-line and stopped while walking; on the one leg stand, Defendant swayed, put her foot down, and used arms for balance; on the HGN test Defendant exhibited in both eyes a lack of smooth pursuit, distinct nystagmus at maximum deviation, and onset of nystagmus prior to 45 degrees.

3

Sissac appealed to the county court at law, contending that Corporal Jordan had lacked legal justification to detain her until Officer Bundick arrived. The county court at law reversed the ALJ's decision. The Department now appeals the trial court's reversal, contending that substantial evidence supports the ALJ's findings.

## STATUTORY OVERVIEW

A person arrested for the offense of DWI is deemed to have consented to submit a specimen of breath or blood to be analyzed for alcohol concentration. *Id.* § 724.011. If that person refuses to provide the specimen, the Department must suspend her driver's license for 180 days. *Id.* §§ 724.035(a)(1),(d). That person may then request a hearing before an ALJ at the State Office of Administrative Hearings. *Id.* § 724.041(a). At the hearing, the Department must prove by a preponderance of the evidence that:

(1)    reasonable suspicion or probable cause existed to stop or arrest the person;

(2)    probable cause existed to believe that the person was:

    (A)    operating a motor vehicle in a public place while intoxicated; or

    (B)    operating a watercraft powered with an engine having a manufacturer's rating of 50 horsepower or above while intoxicated;

(3)    the person was placed under arrest by the officer and was requested to submit to the taking of a specimen; and

(4)    the person refused to submit to the taking of a specimen on request of the officer.

*Id.* § 724.042.  An ALJ's decision to sustain a driver's license suspension is appealable.  *Id.* at § 524.041(a).

## STANDARD OF REVIEW

Administrative license suspensions are reviewed under Section 2001.174 of the Texas Government Code, which is often referred to as the substantial-evidence standard of review. *See id.* §§ 724.047 (Chapter 524 governs appeals of driver's license suspensions under Chapter 724), 524.002(b) (Chapter 2001 of Government Code applies); Tex. Gov't Code § 2001.174; *see also Texas Dep't of Pub. Safety v. Alford*, 209 S.W.3d 101, 103 (Tex. 2006) (per curiam) (citing *Mireles v. Texas Dep't of Pub. Safety*, 9 S.W.3d 128, 131 (Tex. 1999) (per curiam)).  Section 2001.174 directs us to reverse or remand if Sissac's substantial rights have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

    (A)     in violation of a constitutional or statutory provision;

    (B)     in excess of the agency's statutory authority;

    (C)     made through unlawful procedure;

    (D)     affected by other error of law;

    (E)     not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or

    (F)     arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Tex. Gov't Code § 2001.174(2).  The determination of whether substantial evidence supports an administrative decision is a question of law that we review de novo without deference to the trial

court's ruling. *Alford*, 209 S.W.3d at 103. "The issue for the reviewing court is not whether the agency's decision was correct, but only whether some reasonable basis exists in the record to support that decision." *Mireles*, 9 S.W.3d at 131. We must presume that substantial evidence supports the administrative "findings, inferences, conclusions, and decisions," and the burden is on Sissac, as the party contesting the administrative decision, "to prove otherwise." *Texas Health Facilities Comm'n v. Charter Med.-Dallas Inc.*, 665 S.W.2d 446, 453 (Tex. 1984). If there is more than a scintilla of evidence supporting the administrative findings, this Court must affirm "even if the evidence preponderates against" the agency's decision. *Mireles*, 9 S.W.3d at 131.

## ANALYSIS

The Department raises three issues on appeal. In its first issue, the Department asserts that there is no need to prove that Corporal Jordan had reasonable suspicion or probable cause to stop or arrest Sissac because he never detained her. The Department argues that Sissac approached Corporal Jordan and initiated a consensual encounter that never escalated into a detention. In its second issue, the Department argues in the alternative that, even if Corporal Jordan did detain Sissac, he had probable cause to arrest her because he saw her disregard a police barricade. *See* Tex. Transp. Code § 472.022(a)(2) (person who drives around barricade commits offense). Furthermore, the Department asserts that any detention of Sissac until Officer Bundick arrived served a legitimate law-enforcement purpose by allowing Corporal Jordan to remain at his post at the barricade while another officer transported Sissac to jail. Moreover, Sissac presented no evidence to show that the length of any detention was unreasonable. Finally, in its third issue, the Department contends that when Officer Bundick arrived, he observed numerous signs indicating that Sissac was intoxicated,

6

which gave him reasonable suspicion to detain Sissac to conduct field sobriety tests. According to the Department, Sissac's poor performance on those tests gave Officer Bundick probable cause to arrest her for DWI and to request the specimen of breath or blood.

Sissac responds that her encounter with Corporal Jordan was not consensual and that he illegally detained her without reasonable suspicion or probable cause. Sissac asserts that Officer Bundick's affidavit establishes that Corporal Jordan stopped her for passing the police barricade but does not establish that he had legal justification to further detain her for Officer Bundick's DWI investigation. Sissac also urges that Officer Bundick's affidavit is silent as to whether Corporal Jordan observed any signs of intoxication and contends that we cannot infer that Corporal Jordan observed the same things that Officer Bundick observed.[3]

A brief overview of the types of police encounters will provide context for our analysis of the encounter between Corporal Jordan and Sissac. Interactions between law enforcement and citizens can be characterized as consensual encounters, investigative detentions, or arrests. *State v. Woodard*, 341 S.W.3d 404, 411 (Tex. Crim. App. 2011). Law enforcement must have legal justification to conduct arrests and investigative detentions, as these are seizures that implicate Fourth Amendment rights. *Id.* Arrests require either a warrant or probable cause. *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009). "'Probable cause' for a warrantless arrest exists if, at the moment the arrest is made, the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a

---

[3] The Department had asserted at the administrative hearing that the ALJ could infer that Corporal Jordan had observed the same signs of intoxication that Officer Bundick indicated on his affidavit, but the Department does not raise this issue on appeal.

prudent man in believing that the person arrested had committed or was committing an offense."
*Id.* (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). Investigative detentions are brief seizures that are less intrusive than arrests. *Derichsweiler v. State,* 348 S.W.3d 906, 914 (Tex. Crim. App. 2011) (citing *Alabama v. White*, 496 U.S. 325, 330 (1990)). They require only reasonable suspicion, which "exists when the officer has specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has, or soon will be, engaged in criminal activity." *Neal v. State*, 256 S.W.3d 264, 280 (Tex. Crim. App. 2008). Consensual encounters, during which the citizen is free to leave at any time, do not trigger Fourth Amendment protections. *Woodard*, 341 S.W.3d at 411 (citing *Florida v. Bostick*, 501 U.S. 429, 434 (1991)). Courts must look to the totality of the circumstances to determine whether an interaction between a citizen and the police is a consensual encounter or a seizure that implicates Fourth Amendment rights. *Id.*

The central issue in this case is whether Corporal Jordan's encounter with Sissac was consensual. Sissac does not dispute that probable cause existed for Officer Bundick to arrest her, she only argues that Corporal Jordan lacked legal justification to detain her until Officer Bundick arrived. Although it is the Department's burden to show that reasonable suspicion or probable cause existed to detain or arrest Sissac, it is Sissac's burden to show that she was detained in the first place. *See Amador*, 275 S.W.3d at 879 ("A defendant who alleges a seizure, such as an arrest, in violation of the Fourth Amendment has the burden of producing some evidence that rebuts the presumption of proper police conduct. A defendant may carry this initial burden by establishing that the seizure occurred without a warrant. If this showing is made, then the burden shifts to the State to prove that

8

the seizure was nonetheless reasonable." (citations omitted)). While it is clear that Officer Bundick arrested Sissac, we must determine whether Sissac has shown that Corporal Jordan also seized her.

There is no "bright-line rule" governing when an encounter is consensual and when it is a seizure implicating Fourth Amendment rights. *Woodard*, 341 S.W.3d at 411. The crucial question is whether "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). The officer's behavior is especially important to this determination. *Woodard*, 341 S.W.3d at 411. Circumstances that can indicate a seizure include "the threatening presence of multiple officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Mendenhall*, 446 U.S. at 554. When an interaction starts out as a consensual encounter, physical force or a show of authority by the officer generally indicates that the interaction has escalated into a seizure. *Woodard*, 341 S.W.3d at 411.

We have limited information regarding the encounter between Corporal Jordan and Sissac. Officer Bundick's affidavit states that Sissac passed the barricade, Corporal Jordan walked toward her car, and then Sissac parked, exited the vehicle, and walked toward Corporal Jordan to ask him a question. Officer Bundick checked a box on his affidavit indicating that Corporal Jordan "stopped" Sissac. Sissac's passing the police barricade was the reason given for the "stop." Sissac contends that because Officer Bundick's affidavit establishes that Corporal Jordan "stopped" her,

9

legal justification was required for the stop and for what Sissac characterizes as Corporal Jordan's "*further* [detention of] Sissac for a DWI investigation."[4]

"A 'stop' to make an inquiry, on its own, does not show a seizure." *Woodard*, 341 S.W.3d at 413; *see also Bostick*, 501 U.S. at 434 ("A seizure does not occur simply because a police officer approaches an individual and asks a few questions."). Officer Bundick's checking the box to indicate that Corporal Jordan stopped Sissac because she passed the police barricade is not tantamount to a seizure under the circumstances of this case, where there is evidence that Sissac approached Corporal Jordan voluntarily and there is no evidence that Corporal Jordan pulled her over or prevented her from leaving. As long as the individual can terminate an encounter at will, it is a consensual encounter. *Woodard*, 341 S.W.3d at 411. There is no evidence suggesting that Corporal Jordan used force, showed authority, or otherwise indicated that Sissac was not free to leave or to terminate her interaction with him at any time. Accordingly, Sissac has not established that Corporal Jordan seized her. Because Corporal Jordan did not detain Sissac, we sustain the Department's first issue.[5]

---

[4] As noted earlier, there is no evidence in the record to indicate the time of the initial encounter between Corporal Jordan and Sissac or the length of time until Officer Bundick arrived on the scene. The only evidence related to time is Officer Bundick's affidavit, which lists 1:17 a.m. as the time of call and 1:50 a.m. as the time of arrest.

[5] Having determined that Corporal Jordan did not detain Sissac, we need not address the Department's second issue in which it asserts that Corporal Jordan had probable cause to arrest Sissac for passing the police barricade and that Sissac presented no evidence to show that the length of any detention was unreasonable. *See* Tex. R. App. P. 47.1 (appellate courts must hand down opinions that are as brief as practicable but that address every issue raised and necessary to disposition of appeals).

As noted above, Sissac does not dispute that probable cause existed for Officer Bundick to arrest her. *See Charter Med.-Dallas*, 665 S.W.2d at 453 (burden is on party challenging agency's decision to prove decision not supported by substantial evidence). Officer Bundick's affidavit describing Corporal Jordan's observation of Sissac committing an arrestable traffic offense, Officer Bundick's own observations of Sissac, and the results of the field sobriety tests provide more than the scintilla of evidence required to support the ALJ's finding that Officer Bundick had probable cause to arrest Sissac. *See Stagg v. Texas Dep't of Pub. Safety*, 81 S.W.3d 441, 444 (Tex. App.—Austin 2002, no pet.) (officer's affidavit stating that driver performed poorly on field sobriety tests, slurred speech, smelled of alcohol, had bloodshot eyes, and had poor balance provided more than scintilla of evidence necessary to affirm ALJ's finding of probable cause). Accordingly, we sustain the Department's third issue.

Substantial evidence supports the ALJ's findings that the Department satisfied its burden to prove all elements of Section 724.042, including reasonable suspicion or probable cause to stop or arrest. *See* Tex. Transp. Code § 724.042(a)(1). Consequently, we conclude that the trial court erred by reversing the ALJ's decision.

## CONCLUSION

Having concluded that the trial court erred by reversing the ALJ's decision, we reverse the trial court's judgment and render judgment reinstating the ALJ's administrative order authorizing the Department to suspend Sissac's driver's license for 180 days.

_____

Cindy Olson Bourland, Justice

Before Chief Justice Rose, Justices Goodwin and Bourland

Reversed and Rendered

Filed:   April 30, 2015