**Opinion filed September 29, 2017**



## In The

# Eleventh Court of Appeals

_____

## No. 11-16-00125-CR

_____

## TIMOTHY URBANEK, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the County Court at Law**
**Erath County, Texas**
**Trial Court Cause No. 46,090**

### M E M O R A N D U M   O P I N I O N

Timothy Urbanek entered an open plea of "guilty" to the Class A misdemeanor offense of driving while intoxicated with a blood alcohol level of 0.15 or greater.[1] The trial court assessed punishment at confinement in county jail for

---

[1]*See* TEX. PENAL CODE ANN. § 49.04(a), (d) (West Supp. 2016).

one year and imposed a $750 fine, but it suspended the confinement portion of the sentence and placed Appellant on community supervision for eighteen months.

On appeal, Appellant argues in his first issue that the trial court erred when it denied his motion to suppress because his encounter with law enforcement was not consensual.  In his second issue, Appellant argues that, even if the initial contact was consensual, the trial court erred when it found that law enforcement had reasonable suspicion to justify an investigative detention. We affirm.

I. *Evidence at Suppression Hearing*

Justin Becker, a trooper with the Texas Department of Public Safety, was on patrol around midnight in an area near two bars.  Trooper Becker noticed a pickup approach an intersection and roll several feet past the stop sign before it came to a complete stop.  The pickup, driven by Appellant, came from the direction of the two bars.  As Appellant passed Trooper Becker's vehicle, Trooper Becker observed that Appellant's license plate lamps did not appear to be working.  Trooper Becker turned around and followed Appellant but did not activate his lights or siren.

Trooper Becker observed Appellant pull into a gas station next to a gas pump, but Appellant did not exit his pickup.  Trooper Becker noticed that Appellant's license plate lamps worked but were not bright enough to properly illuminate the license plate.  Trooper Becker pulled into the gas station and approached Appellant's pickup to talk with Appellant and make sure that Appellant was "okay"; Trooper Becker thought Appellant's behavior was odd.

Trooper Becker asked Appellant if he was okay, asked why he had stopped at the gas station, and asked if they could talk for a minute.  Appellant responded, "Yea, we can talk."  Trooper Becker said, "Okay, good deal."

Trooper Becker explained to Appellant that he needed to clean his license plate lamps and informed Appellant that he had rolled through an intersection. During his interaction with Appellant, Trooper Becker observed that Appellant's eyes were bloodshot and his speech was slurred, that there was a strong odor of alcohol, and that Appellant appeared to have trouble standing without swaying. Trooper Becker asked Appellant for his driver's license and then asked Appellant how much he had had to drink. Appellant responded, "a little bit," and Trooper Becker asked him to step over in front of Trooper Becker's patrol vehicle. During that time, Appellant also responded that he "had about five beers."

Trooper Becker turned his spotlight on and made a call to dispatch about Appellant's pickup, driver's license, and insurance. After he spoke to dispatch, Trooper Becker asked Appellant additional questions about what he had had to drink, when he started drinking, whether he wore contact lenses, whether he had any head injuries, how old he was, whether he had taken any medications or illicit drugs, and whether he was diabetic. Trooper Becker then completed a series of sobriety tests. During the tests, Appellant swayed and had to be steadied by Trooper Becker. Before beginning one of those tests, Appellant told the officer that he had had "plenty to drink tonight" and "[did not] need to be driving." Trooper Becker then placed Appellant under arrest.

## II. *Standard of Review*

We review the trial court's decision on a motion to suppress evidence under a bifurcated standard of review. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000) (citing *Guzman v. State*, 955 S.W.2d 85, 88–89 (Tex. Crim. App. 1997)). At a suppression hearing, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d

17, 24–25 (Tex. Crim. App. 2007). We afford almost total deference to a trial court's determination of the historical facts that the record supports, especially when the trial court evaluated the credibility and demeanor of witnesses as part of the basis of its findings of fact. *Guzman*, 955 S.W.2d at 88–89. We review de novo the trial court's application of the law. *Id.*

We review the evidence in the light most favorable to the trial court's decision and will uphold that decision if it is reasonably supported by the record. *Carmouche*, 10 S.W.3d at 328. When, as in this case, the trial court makes no explicit findings of historical fact, we presume that it made the findings necessary to support its ruling, provided that they are supported in the record. *Id.*

### III. *Analysis*

We will first address Appellant's complaint that Trooper Becker's interaction with him was not a consensual encounter, followed by his complaint that Trooper Becker lacked reasonable suspicion to detain him.

A. *Issue One: Trooper Becker's initial contact with Appellant was a consensual encounter.*

Appellant argues that the trial court erred when it denied his motion to suppress evidence because Trooper Becker's stop was not a consensual encounter. Appellant asserts that Officer Becker's presence, demeanor, and initial commands led Appellant to think that he was not free to leave. Police and citizens may engage in three distinct types of interactions: consensual encounters, investigative detentions, and arrests. *Wade v. State*, 422 S.W.3d 661, 667 (Tex. Crim. App. 2013); *State v. Woodard*, 341 S.W.3d 404, 410–11 (Tex. Crim. App. 2011). Unlike an investigative detention and an arrest, consensual police-citizen encounters do not implicate Fourth Amendment protections. *Id.* An encounter occurs when an officer

approaches a person to ask questions. *See Florida v. Bostick*, 501 U.S. 429, 434 (1991).

We disagree with Appellant's argument that Trooper Becker's initial interaction with him constituted a detention or rendered him in custody. Trooper Becker testified that he did not initiate a traffic stop of Appellant because Appellant was already parked at the gas station. However, Trooper Becker had noticed two traffic violations, a rolling stop and an improperly illuminated license plate, that would have justified a traffic stop. *See Castro v. State*, 227 S.W.3d 737, 742 (Tex. Crim. App. 2007).

Trooper Becker explained that he did not block Appellant's vehicle at the gas station. Trooper Becker asked if Appellant was okay, asked why he had stopped at the gas station, and asked if they could talk for a minute; Appellant responded, "Yea, we can talk." Trooper Becker said, "Okay, good deal." After Appellant agreed to talk to Trooper Becker, Trooper Becker asked Appellant if his lights were still on and if they could move to the back of Appellant's pickup.

No justification is required for an officer to request information from a citizen. *Woodard*, 341 S.W.3d at 411. An officer need not show any particular level of suspicion for such an encounter because the citizen is under no obligation to continue speaking with the officer. *Bostick*, 501 U.S. at 434. However, when an officer through force or a showing of authority restrains a citizen's liberty, the encounter is no longer consensual. *Woodard*, 341 S.W.3d at 411. In this case, Trooper Becker did not use any force or coercion to make Appellant think he was not free to leave. Therefore, the initial interaction between Appellant and Trooper Becker was not a detention but, rather, a consensual encounter because Appellant was free to leave. But even if we are incorrect, Trooper Becker had reasonable suspicion that justified

a stop when Appellant committed two traffic violations in Trooper Becker's presence. *See Castro*, 227 S.W.3d at 742. We overrule Appellant's first issue.

    B. *Issue Two*: *Trooper Becker had reasonable suspicion to detain Appellant to investigate.*

In Appellant's second issue, he asserts that Trooper Becker lacked reasonable suspicion to detain him because Trooper Becker failed to articulate specific facts to justify his investigation of Appellant. We note that what begins as a consensual encounter may escalate to an investigative detention if the answers provided, and the officer's observations, provide reasonable suspicion to believe that the offense of DWI has occurred. *State v. Rudd*, 255 S.W.3d 293, 298 (Tex. App.—Waco 2008, pet. ref'd). Under the Fourth Amendment, a police officer who lacks probable cause but whose "observations lead him reasonably to suspect" that a particular person committed, is committing, or is about to commit a crime may detain the person in order for the police to "investigate the circumstances that provoke suspicion." *United States v. Brigoni-Ponce*, 422 U.S. 873, 881 (1975); *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011). The stop and inquiry must be "reasonably related in scope to the justification for [the] initiation." *Terry v. Ohio*, 392 U.S. 1, 29 (1968).

Reasonable suspicion exists if the detaining officer has specific articulable facts that, when taken together with rational inferences from those facts, lead the officer to conclude that the person detained is, has been, or soon will be engaged in criminal activity. *Id.* at 21. These facts must amount to more than a mere hunch or suspicion that criminal activity is afoot. *Id.* at 22. Moreover, it is not reasonable to expect police to guess as to the nature of criminal conduct before they decide how to interact with a suspect. *Berkemer v. McCarty*, 468 U.S. 420, 431 (1984).

6

An officer may ask a moderate number of questions to determine an individual's identity and obtain information that either confirms or dispels the officer's initial suspicion. *Id.* at 439. The reasonable-suspicion determination is an objective standard made by considering the totality of the circumstances. *Ford v. State*, 158 S.W.3d 488, 492–93 (Tex. Crim. App. 2005). Circumstances may all seem innocent in isolation, but if they combine to reasonably suggest the imminence of criminal conduct, an investigative detention is justified. *Derichsweiler*, 348 S.W.3d at 914. The officer must be able to point to specific and articulable facts which, taken together, along with rational inferences from those facts, reasonably warrant the intrusion on an individual. *Terry*, 392 U.S. at 21. This must then be judged by whether an objective finder of fact would agree that the available facts "'warrant a man of reasonable caution in the belief' that the action taken was appropriate." *Id.* at 22 (quoting *Carroll v. United States*, 267 U.S. 132, 162 (1925)).

Trooper Becker observed that Appellant drove from the direction of nearby bars at around closing time. He also noticed Appellant commit two traffic violations and pull into a gas station but remain in his vehicle. As soon as Trooper Becker approached and spoke to Appellant, he smelled a strong odor of alcohol on Appellant. Trooper Becker also noticed that Appellant's eyes were bloodshot and his speech was slurred. Trooper Becker asked Appellant for his driver's license. At this point, Trooper Becker asked Appellant if he had been drinking, and Appellant responded that he had "had about five beers." Trooper Becker then conducted a series of field sobriety tests. In such a case, an officer may perform field sobriety tests, and the results of the sobriety testing may then lead to probable cause for an arrest. *See Rodriguez v. State*, 191 S.W.3d 428, 444–45 (Tex. App.—Corpus Christi 2006, pet. ref'd). Trooper Becker testified that he decided to arrest Appellant after

he completed his investigation. Appellant also stated that he had had "plenty to drink" that night and should not drive. When faced with the detached scrutiny of a judge, the trial court determined that Trooper Becker's actions were reasonable in light of the circumstances. *See Terry*, 392 U.S. at 21. After a review of the record, we cannot hold that the trial court erred when it found that Trooper Becker had reasonable suspicion to detain Appellant and investigate whether Appellant was driving while intoxicated. We overrule Appellant's second issue.

IV. *This Court's Ruling*

We affirm the judgment of the trial court.

MIKE WILLSON

JUSTICE

September 29, 2017

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., an[d Bailey, J.