

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-14-00076-CR

The **STATE** of Texas,
Appellant

v.

Ernesto Eliazar **VELA**,
Appellee

From the County Court at Law, Kerr County, Texas
Trial Court No. CR121162
Honorable Spencer W. Brown, Judge Presiding

Opinion by:     Rebeca C. Martinez, Justice

Sitting:     Catherine Stone, Chief Justice
     Karen Angelini, Justice
     Rebeca C. Martinez, Justice

Delivered and Filed:  December 10, 2014

AFFIRMED

The State appeals from the trial court's order granting Ernesto Vela's motion to suppress in this possession of marijuana prosecution.  We affirm the trial court's suppression order.

### FACTS

At approximately 2:00 a.m. on October 27, 2012, Vela was stopped by Kerrville Police Officer Amanda Wedgeworth as he walked through a parking lot adjacent to a bar and was subsequently arrested for public intoxication.  Upon searching Vela's backpack after his arrest, the officer discovered a small quantity of marijuana.  Vela was charged with possessing a usable

quantity of marijuana in the amount of two ounces or less. Vela filed a motion to suppress the physical evidence seized without a warrant. The evidence at the suppression hearing consisted of Vela's testimony, the testimony of Officer Wedgeworth and Officer Guy Edward Hilsabeck, a police report of the incident, and the patrol car videos.

At the suppression hearing, Vela testified that he had arrived in Kerrville at 12:30 a.m. on a bus from San Antonio and was on his way to Ingram on foot. Because it was cold outside, he decided to stop at the Guadalupe River Club ("G.R.C."), a bar in Kerrville, for a couple of shots to "get the blood flowing" and then walk the rest of the way. Vela testified that he exited the G.R.C. and started walking through the adjacent parking lot of the Snowflake Donut Shop. Vela stated he was walking west toward a Mini-Mart "[s]o I could get some snacks while I was walking to Ingram." Vela noticed Officer Wedgeworth's patrol car was parked directly across the street from the bar with the headlights turned off and the running lights on. As soon as he stepped out of the G.R.C. parking lot into the Snowflake parking lot, Officer Wedgeworth turned on the headlights, drove across the street, and pulled into the parking lot, stopping in front of Vela. Wedgeworth began asking Vela where he was coming from, what he was doing, and where he was going. Vela told her he just got off a bus from San Antonio and was walking to Ingram. Officer Wedgeworth asked whether he had anyone who could give him a ride, but Vela did not. Officer Wedgeworth instructed him to "step over by the curb" and to sit down on the parking curb and wait for a backup officer to arrive; Vela complied. Vela testified he immediately felt that he was not free to leave and believed that he was being detained.

Vela testified at the hearing that even though he had a couple of drinks at the G.R.C., he was not drunk. Vela stated that he "absolutely" could have walked to Ingram, as he has walked much farther than that in the past. His backpack was heavy, weighing between 35 to 45 pounds, and it was windy and cold so he was headed to the Mini-Mart to get some food to warm himself

up before continuing on to Ingram. Vela explained that while sitting on the curb and waiting for the backup officer to arrive, he leaned back on top of his backpack, which he was wearing, and smoked a cigarette. Vela testified that before that time, he was not sitting or reclining in the Snowflake parking lot; he did not sit down on the curb until instructed to by Officer Wedgeworth. Officer Hilsabeck arrived with a "ride along" passenger in his patrol car. When Officer Hilsabeck walked over and told Vela to stand up, Vela testified he stood straight up without having to adjust the position of his feet at all. Vela stated he was familiar with field sobriety tests and when Officer Hilsabeck began to administer the HGN test, Vela told him there was no need because he was "f**ked up."

Officer Wedgeworth testified that, rather than being parked across from the G.R.C., she was driving eastbound on Junction Highway and was stopped at a traffic light near G.R.C. and Snowflake Donut Shop. Wedgeworth acknowledged routinely patrolling the G.R.C. parking lot at 2:00 a.m. to look for any disturbances or people "passed out on the ground." Officer Wedgeworth stated she noticed Vela while she was stopped at the light because he was sitting down by the parking curb in front of the closed Snowflake Donut Shop; he was reclining on a backpack with his legs out. She testified she did not see Vela come out of the G.R.C. By the time Officer Wedgeworth pulled her patrol car into the Snowflake parking lot, Vela had gotten up and was walking westbound. Officer Wedgeworth stopped her patrol car in front of Vela and exited her vehicle. Officer Wedgeworth began asking him what he was doing, where he was headed, and whether he had been drinking. Upon being told that he was walking to Ingram, Officer Wedgeworth told Vela to go sit down on the curb and wait. Officer Wedgeworth stated she believed Vela was having trouble with his balance, had an odor of alcohol, and his speech was hard to understand. In her opinion, Vela was intoxicated. Officer Wedgeworth asked Vela if he had anyone who he could call to come pick him up, but he said he did not. Vela was cooperative

and answered her questions; he was not aggressive or combative, and had no weapons. Officer Wedgeworth testified that Vela was not detained during this time and he could have gotten up and walked away at any time. She did not, however, tell Vela that he was free to leave.

Officer Hilsabeck testified that when he arrived as backup for Officer Wedgeworth, he observed Vela sitting on the curb and reclining on his backpack—"almost laying down flat." Officer Hilsabeck told Vela to stand up and began administering the HGN test. Vela stated at that time, "Man, I'm f\*\*ked up." Officer Hilsabeck took this to mean Vela was intoxicated. Officer Hilsabeck testified it was immediately apparent to him that Vela was intoxicated based on Vela's swaying back and forth, slurred speech, and "general appearance of being extremely intoxicated." Officer Hilsabeck stated both he and Officer Wedgeworth asked Vela if he could call somebody to take him home, but Vela stated there was no one. Officer Hilsabeck then placed Vela under arrest for public intoxication "so he would not endanger himself by staggering into traffic, or whatever." Officer Wedgeworth then searched Vela's backpack and found a bag containing two ounces of marijuana.

Finally, the videos from the two patrol cars were admitted into evidence and the witnesses testified about what the videos show.[1] Officer Wedgeworth agreed that her patrol car video shows Vela was walking at the time she pulled into the Snowflake parking lot. The video shows Vela wearing a hoodie, cap, and backpack while walking along and smoking a cigarette. He then stops and stands still when Officer Wedgeworth pulls her patrol car in front of him. Vela does not appear to be swaying or staggering on the video, although the initial contact between Vela and Officer Wedgeworth is off camera. Officer Wedgeworth and Vela can be heard discussing the fact that he

---

[1] The record is not clear as to whether the trial judge viewed the patrol car videos after the hearing and before making his written findings of fact and conclusions of law. The videos were admitted at the hearing, but the trial judge stated that he did not find it necessary to view the videos during the hearing.

is walking to Main Street in Ingram. The video then shows Officer Wedgeworth taking Vela's identification from him before she directs him to walk over to the curb and sit down; Officer Wedgeworth holds Vela's identification. The video shows Vela tilting or falling backward when he sits down on the curb with the backpack on his back. He then reclines on top of the backpack and smokes a cigarette. When Officer Hilsabeck arrives and instructs Vela to get up, the video shows that Vela stands up from the curb without shifting his feet or stumbling. Officer Wedgeworth removes Vela's backpack from his back, commenting that it is heavy. When Officer Hilsabeck begins to administer the HGN test, Vela states that he is pretty "f**ked up." At that point, Officer Hilsabeck begins handcuffing Vela, stating, "I'll give you a ride, take care of you tonight." Vela then asks if Officer Hilsabeck is "taking me to jail or where I need to be?" Officer Hilsabeck replies that he is "taking you where you need to be, and tonight that's jail." The video then shows Officer Wedgeworth taking Vela's backpack over to the hood of her car, where she looks through it and finds the marijuana. Finally, the video from Officer Hilsabeck's patrol car shows Officer Wedgeworth handing Vela's identification to Officer Hilsabeck after Vela's arrest.

At the conclusion of the hearing, the court granted Vela's motion to suppress. The trial court subsequently entered the following written findings of fact and conclusions of law in support of its ruling:

(1) When Vela came out of the Guadalupe River Club, Officer Amanda Wedgeworth was parked directly across the street with her running lights on and headlights off;

(2) Vela was not sitting on the ground when Officer Wedgeworth first observed him;

(3) Officer Wedgeworth instructed Vela to sit down, and did not tell Vela that he was free to leave;

(4) Officer Wedgeworth told Vela to step over to the parking curb;

***

(6) Officer Wedgeworth did tell Vela to sit down and wait for the other officer to appear, but by the time the other officer arrived, Vela was already under arrest;

(7) Vela was not a danger to himself or others at the time of his arrest; and

(8) Officer Wedgeworth did not have reasonable suspicion to stop and question Vela, nor did she have probable cause to arrest Vela.

## DISCUSSION

### Standard of Review

In reviewing the trial court's ruling on a motion to suppress, we afford almost total deference to the court's determination of historical facts, especially when it is based on assessment of a witness's credibility, as long as the fact findings are supported by the record. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010); *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We apply the same deferential standard when reviewing the court's ruling on "application of law to fact questions" or "mixed questions of law and fact" if resolution of those issues turns on an evaluation of credibility, but review de novo the court's application of the law to the facts, and resolution of mixed questions of law and fact, that do not depend upon credibility assessments. *Amador*, 221 S.W.3d at 673. When, as here, the trial court makes express findings of fact, we view the evidence in the light most favorable to the court's ruling and determine whether the evidence supports the fact findings. *Valtierra*, 310 S.W.3d at 447.

### Analysis

In addition to arguing that the trial court's fact findings are not supported by the record, the State raises four arguments as to why the court erred in granting Vela's motion to suppress: (1) the initial contact between Officer Wedgeworth and Vela was not a seizure, but merely a consensual police-citizen encounter; (2) the consensual encounter became an investigative

detention only after evidence was developed giving rise to a reasonable suspicion that Vela was engaged in criminal activity, i.e., public intoxication; (3) when Vela was finally arrested by Officer Hilsabeck, the warrantless arrest was supported by probable cause that Vela was committing the offense of public intoxication; and (4) Officer Hilsabeck's warrantless arrest was authorized under Code of Criminal Procedure article 14.03(a)(1) because Vela was found in a suspicious place under suspicious circumstances. *See* TEX. CODE CRIM. PROC. ANN. art. 14.03(a)(1) (West Supp. 2014). With respect to the trial court's findings of fact, it is apparent that the trial court, acting as the sole judge of the credibility of the witnesses and the weight of the evidence, exercised its discretion to resolve conflicts in the evidence by disbelieving the parts of the officers' testimony that conflicted with Vela's testimony. Based on our summary of the record above, and as further discussed under each issue, we conclude the court's fact findings are supported by Vela's testimony and are therefore entitled to great deference. *See Valtierra*, 310 S.W.3d at 447.

> *(1) Consensual Encounter*

The State first asserts the trial court misapplied the law because the initial contact with Vela by Officer Wedgeworth was nothing more than a consensual encounter, for which no particular level of suspicion was required. *See Florida v. Bostick*, 501 U.S. 429, 434 (1991); *State v. Woodard*, 341 S.W.3d 404, 411 (Tex. Crim. App. 2011) (officer can approach a citizen in public to ask questions without any particular level of suspicion because citizen is under no obligation to speak with the officer and may terminate the encounter at will). The primary question in determining whether an interaction between police and a citizen is consensual or a seizure implicating Fourth Amendment protections is "whether a reasonable person in the defendant's shoes would have felt free to ignore the request or terminate the interaction." *Bostick*, 501 U.S. at 434; *Woodard*, 341 S.W.3d at 411. "If it was an option to ignore the request or terminate the interaction, then a Fourth Amendment seizure has not occurred." *Woodard*, 341 S.W.3d at 411

(citing *Brendlin v. California*, 551 U.S. 249, 255 (2007)). In making this determination, we consider the totality of the surrounding circumstances, including the time and place of the encounter, "but the officer's conduct is the most important factor." *Woodard*, 341 S.W.3d at 411; *State v. Garcia-Cantu*, 253 S.W.3d 236, 244 (Tex. Crim. App. 2008). There is no bright-line rule that governs when a consensual encounter becomes a seizure, but generally when an officer restrains a citizen's liberty through force or a show of authority, the encounter ceases to be consensual and becomes a detention or arrest. *Brendlin*, 551 U.S. at 255; *Crain v. State*, 315 S.W.3d 43, 49 (Tex. Crim. App. 2010).

We disagree that the initial contact between Officer Wedgeworth and Vela was merely a consensual encounter. Even though the interaction occurred in a public parking lot, Officer Wedgeworth pulled her marked patrol car in front of Vela as he was walking through the lot and stopped in a manner which forced Vela to stop and impeded Vela's progress. Officer Wedgeworth's subsequent actions of questioning Vela, taking his identification, and instructing Vela to sit down on the curb and to wait for a second officer to arrive went beyond the scope of a voluntary encounter. Vela testified that he did not feel free to disregard Officer Wedgeworth's instructions to sit on the curb and wait, and that he felt "immediately detained." Although Officer Wedgeworth testified at the suppression hearing that Vela could have gotten up and simply walked away at any time, she conceded that she did not inform Vela that he was free to leave. In addition, the fact that Officer Wedgeworth took Vela's identification from him before instructing him to sit on the curb and did not return the identification during the entire stop supports the conclusion that a detention occurred. *See Florida v. Royer*, 460 U.S. 491, 501-02 (1983) (taking and holding defendant's identification amounts to a show of official authority such that a reasonable person would not have believed he was free to leave). We conclude the trial court did not misapply the law in determining that a reasonable person in Vela's shoes would not have believed he was free

to ignore Officer Wedgeworth's instructions to sit down and wait, and would not have believed he was free to get up and leave; therefore, the initial interaction was not a consensual police-citizen encounter, but was an investigative detention. *See Crain*, 315 S.W.3d at 49.

### *(2) Investigative Detention*

Having determined that Officer Wedgeworth's stop and questioning of Vela amounted to an investigative detention, rather than merely a consensual encounter, the next issue becomes whether the totality of the circumstances was sufficient to support a reasonable suspicion by Officer Wedgeworth that Vela was engaged in criminal activity, i.e., public intoxication. *See Woodard*, 341 S.W.3d at 411; *Crain*, 315 S.W.3d at 49. The State bears the burden of producing specific, articulable facts known to the officer at the moment the seizure occurred which amount to a reasonable suspicion that Vela had been, was currently, or soon would be involved in criminal activity. *See Woodard*, 341 S.W.3d at 411.

A person commits the offense of public intoxication by appearing in a public place while intoxicated to the degree that the person may endanger himself or another. TEX. PENAL CODE ANN. § 49.02(a) (West 2011). The trial court specifically found that Vela was not a danger to himself or others at the time. Even if we assume that Vela was intoxicated, the record does not contain any specific articulable facts known to Officer Wedgeworth at the time she told him to go sit on the curb and wait which would support a reasonable suspicion that Vela was, or would be, a danger to himself or others due to his level of intoxication. *See id.* It is not a crime to be intoxicated, even in a public place; the person must pose a danger to be engaged in a criminal offense. *Id.* Officer Wedgeworth testified she first noticed Vela because he was sitting or reclining in the Snowflake parking lot, which suggests that Vela was so inebriated that he could not stand up. The trial court, however, discredited this testimony and instead credited Vela's testimony that he was walking through the parking lot, and the only time he sat down in the parking lot was after Officer

Wedgeworth told him to do so. The evidence showed that Vela was not aggressive or combative, but was cooperative and polite with the officer. There was no evidence that Vela was walking in an unsafe area, or in an unsafe manner. Officer Wedgeworth acknowledged on cross-examination that Vela was not walking near the highway, and he was not stumbling and falling down; at most, Officer Wedgeworth stated she saw Vela sway. The State argues that because Vela stated he was walking to Ingram, that shows he was a danger to himself because he could have "staggered into traffic." We disagree that this amounts to anything other than speculation. Giving proper deference to the trial court's role as fact finder, we conclude the court's finding that Vela was not a danger to himself or others at the time of his seizure is supported by the record. We further conclude that, lacking facts to create a reasonable suspicion that Vela's condition posed a danger, Officer Wedgeworth lacked reasonable suspicion to believe Vela was committing the offense of public intoxication and the detention was illegal. *See Terry v. Ohio*, 392 U.S. 1, 21 (1968); *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000).

Having determined that Officer Wedgeworth lacked reasonable suspicion of criminal activity to warrant Vela's investigative detention, we need not address the State's other issues concerning Officer Hilsabeck's actions.

Based on the foregoing reasons, we overrule the State's issues on appeal and affirm the trial court's order granting Vela's motion to suppress.

Rebeca C. Martinez, Justice

DO NOT PUBLISH