**Affirmed and Opinion Filed December 8, 2017**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-16-01216-CR
### No. 05-16-01217-CR

**TERENCE DANDRE MCMILLER, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 382nd Judicial District Court**
**Rockwall County, Texas**
**Trial Court Cause Nos. 2-15-279, 2-15-280**

## MEMORANDUM OPINION

Before Justices Francis, Stoddart, and Whitehill
Opinion by Justice Whitehill

A jury found appellant guilty of two possession of a controlled substance offenses and assessed punishment at twelve years imprisonment and a $7,500 fine for each offense. In a single issue, appellant argues the trial court erred by denying his motions to suppress the warrantless search of his vehicle because (i) there was no probable cause and (ii) the length of the detention was unreasonable. Because we conclude that the officer had probable cause to conduct the warrantless search and the length of appellant's detention was not unreasonable, we affirm the trial court's judgments.

# I. BACKGROUND

Appellant was charged with two possession of a controlled substance offenses that were consolidated for trial.[1] Before trial, he moved to suppress the evidence seized in a warrantless vehicle search. The motions were carried with his jury trial, and later denied. A jury found appellant guilty of both offenses and assessed punishment at twelve years imprisonment and a $7,500 fine for each offense. Appellant challenges the trial court's denial of his motions to suppress.

# II. ANALYSIS

## A. Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). The trial judge is the sole trier of fact and judge of witness credibility and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007). Therefore, we give almost total deference to the trial court's rulings on (i) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor and (ii) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005).

---

[1] In cause number 2-15-279, appellant was charged with possession of a controlled substance in an amount of one gram or more but less than four grams in penalty group one, and in cause number 2-15-280 he was charged with possession of a controlled substance in an amount of one gram or more but less than four grams in penalty group two. These offenses were enhanced to a second-degree punishment range. *See* TEX. PENAL CODE § 12.42(a).

We must view the evidence in the light most favorable to the trial court's ruling. *State v. Kelly,* 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When, as here, there are no explicit fact findings and neither party timely requested findings and conclusions from the trial court, we imply the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings. *See State v. Garcia–Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). We then review the trial court's legal ruling de novo unless the implied fact findings supported by the record are also dispositive of the legal ruling. *Kelly*, 204 S.W.3d at 819.

**B.      Did the officer have probable cause to search appellant's vehicle without a warrant?**

Appellant argues that the totality of the evidence contradicts the officer's statement that he acquired immediate probable cause to search the vehicle when he smelled marijuana. He posits that if the officer "truly had probable cause to search," nothing could be gained by continuing questioning and developing inconsistencies. Thus, appellant maintains that the trial court's implied finding of a valid search is not supported by the evidence and deference to the trial court's factual determination is not required. We disagree.

**1.      Applicable Law**

When a defendant asserts a search and seizure violates the Fourth Amendment, he bears the initial burden of producing evidence to rebut the presumption of proper conduct by law enforcement. *State v. Woodard*, 341 S.W.3d 404, 412 (Tex. Crim. App. 2011). A defendant can satisfy this burden by showing that the search and seizure was without a warrant. *Id*. The burden then shifts to the State to establish that the search or seizure was nevertheless reasonable under a totality of the circumstances. *Id.* It is undisputed there was no search warrant here.

–3–

Although a warrantless searches are considered per se unreasonable, a warrantless vehicle search is reasonable if an officer has probable cause to believe that the vehicle contains contraband. *Wiede*, 214 S.W.3d at 24.

Probable cause exists when reasonably trustworthy facts and circumstances within the knowledge of the officer would lead persons of reasonable prudence to believe that an instrumentality of a crime or evidence pertaining to a crime will be found. *See Gutierrez v. State*, 221 S.W.3d 680, 685 (Tex. Crim. App. 2007). Furthermore, probable cause exists to search a vehicle based on the smell of marijuana emanating from that vehicle alone. *See Moulden v. State*, 576 S.W.2d 817, 819 (Tex. Crim. App. 1978).

### 2. Application of Law to Facts

Officer Barrett Morris with the Rockwall police department testified about the warrantless search at issue. According to Morris, at approximately 12:35 a.m. on the day in question, he was working criminal interdiction on Interstate 30 and saw a vehicle dramatically decrease its speed when he came into view.[2] Although the speed limit was sixty-five miles per hour, Morris had slowed to forty-five miles per hour when the vehicle finally started to pass. Morris said that it is a common indicator of nervousness when drivers reduce their speed after seeing a police car.

The vehicle exited, and Morris followed it. There were two people in the car. Once he was behind the vehicle, Morris thought he saw an air freshener hanging in the car.

Morris initiated a stop when the driver committed a traffic violation by crossing solid white lines on the road. He then ran the tag and learned that the vehicle was a rental.

Because the vehicle had stopped in the right traffic lane, Morris approached on the passenger side and smelled an overwhelming odor of air freshener before he reached the car's

---

[2] An interdiction officer works the main thoroughfares looking for criminal activity.

bumper. Morris testified that in his years of criminal interdiction experience, air fresheners in rental cars were "automatically a red flag" because rent cars do not typically come equipped with air fresheners. He further explained that people transporting drugs frequently rent cars to avoid the risk of their own car being seized.

Morris identified the driver and the passenger, appellant. Although Morris knew the vehicle was a rental, the driver told him it was her car. Morris later learned that the car had been rented in appellant's name.

As he spoke with the driver and appellant, Morris smelled a "strong" marijuana odor. But he did not say anything about it immediately because he was alone and knew that things could escalate.

The driver was cooperative when he asked her to get out of the vehicle. Appellant was unhappy that Morris got the driver out of the car, and challenged his legal right to do so.

Morris spoke with both the driver and appellant separately, and although appellant said they lived together, they gave different addresses. The two also gave inconsistent statements about where they were going, first saying that they were going to Denton, and then later saying they were going to Ardmore, Oklahoma and had gotten lost. Appellant and the driver were also inconsistent about whether they were following the driver's sister or if she was behind them. These inconsistencies were part of the totality of the circumstances Morris considered when deciding to conduct a warrantless search.

Morris told the driver that he was waiting for dispatch to provide criminal history returns. When Morris asked the driver about the marijuana smell and if there was anything illegal in the vehicle, she said they had smoked cigarettes. Morris then explained that the marijuana smell gave him probable cause to search the vehicle, asked appellant to step out of the car, and called for a cover officer and a supervisor.

Officers Avery and Yount arrived to assist Morris. Sergeant Ray also came because of appellant's demeanor.

While searching the car, Morris found a bottle of "Kush" air freshener. He testified that "Kush" is a slang term for marijuana and he has "never seen Kush or any other marijuana-related air freshener in a vehicle with the innocent motoring public." He also found marijuana residue located throughout the car. Morris showed some of the residue to appellant because appellant had acted like he didn't believe him when Morris said he smelled marijuana in the car.

When Yount opened the gas cap, he found a small baggie of marijuana, approximately twenty pills, later identified as 30 milligram Oxycodone, and a crystal rock looking substance, later identified as methylone. The driver and appellant were arrested.

Appellant argues that Morris did not mention smelling marijuana in his personal microphone as he did when he smelled the air freshener, and did not mention the marijuana at all until about seventeen minutes into the stop. He also never said that he smelled marijuana on appellant's or the driver's clothing, and did not find any evidence of papers, pipes, or other smoking tools. He further argues that "it can be reasonably questioned" whether the air freshener in the rental car was Morris's "true motivation" and whether Morris's opinion that this constitutes a red flag for the presence of drugs is reasonable. Finally, he seems to suggest that either the video of the stop or Morris's testimony is contradictory.

We disagree. Neither the video nor the testimony contradicts Morris's testimony that he smelled marijuana. Moreover, as the fact-finder, the trial judge determined Morris's credibility and the weight to be given his testimony. *See Hubert v. State*, 312 S.W.3d 554, 559 (Tex. Crim. App. 2010). We defer to the trial court's implied finding that Morris was credible. *See id.*

The trial court also impliedly found that Morris had probable cause to search the car. Morris said that he smelled marijuana, as well as air freshener commonly used to mask the

marijuana smell. Morris explained that he did not immediately mention the marijuana because he was alone. Morris added that appellant and the driver gave inconsistent statements about where they were going.

The evidence supports the trial court's decision that there was probable cause to search the vehicle without a warrant.

## D. Was the detention length unreasonable?

Appellant argues that "the search beginning at the twenty minute mark [of the video] and ending at the thirty minute mark exceeded a reasonable duration, was not diligently pursued and violated the standard of reasonableness." He also argues that the officer claimed to have had probable cause within two minutes, but did not mention it until seventeen minutes into the stop. Finally, he argues that because there was no probable cause to search, the permissible detention duration is measured by the time necessary to process the traffic violation.

### 1. Applicable Law

Generally, "an investigative stop can last no longer than necessary to effect the purpose of the stop." *Kothe v. State,* 152 S.W.3d 54, 63 (Tex. Crim. App. 2004). A traffic stop may involve both an investigation into the specific suspected criminal activity and a routine check of the driver's license and information. *Id.* at 65. Accordingly, a police officer may reasonably demand identification, a valid driver's license, proof of insurance from the driver, and check for outstanding warrants. *Id*. at 63–64, n. 36. An officer may also request information concerning the vehicle's ownership, the driver's destination, and the trip's purpose. *Lambeth v. State*, 221 S.W.3d 831, 836 (Tex. App.—Fort Worth 2007, pet. ref'd) (en banc) (op. on reh'g).

A detention becomes unreasonable under the circumstances if the officer "unduly prolongs" the detention after the original articulable suspicion is resolved. *See Kothe*, 152 S.W.3d at 65–67. But once an officer concludes the investigation that initiated the traffic stop,

continued detention is permitted if the officer has reasonable suspicion to believe another offense has been or is being committed. *Davis v. State*, 947 S.W.2d 240, 243–45 (Tex. Crim. App. 1997).

"Fourth Amendment 'reasonableness' does not require a 'single, formulaic approach' to a traffic stop investigation, nor does it require rigid adherence to 'the least intrusive means' of investigation." *Id*. at 66 (quoting *United States v. Brigham*, 382 F.3d 500, 511 (5th Cir. 2004)). Instead, we examine "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *Kothe*, 152 S.W.3d at 64.

### 2. Application of Law to the Facts

We have previously held that Morris had probable cause to search when he smelled marijuana, which gave him further reason to continue the investigation. *See Leonard v. State*, 496 S.W.2d 576, 578 (Tex Crim. App. 1978). Morris also identified appellant and the driver, questioned them about their travel plans, ran criminal background checks, and called for back-up. An officer, however, is not required to conduct his investigation in any particular order. *See Kothe*, 152 S.W.3d at 65 ("neither our prior cases nor any other case law of which we were aware institutes a per se rule requiring an officer to immediately obtain the driver's license and registration information and initiate the relevant background checks before asking questions.").

Regardless of whether the time is measured from the initial stop, the start of the ten minute search, or the search duration itself, appellant's detention was not unduly prolonged under the circumstances. Thus, the record supports the trial court's implied finding that the detention length was not unreasonable.

## III.  Conclusion

We resolve appellant's sole issue against him and affirm the trial court's judgments.


/Bill Whitehill/
BILL WHITEHILL
JUSTICE


Do Not Publish
TEX. R. APP. P. 47
161216F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

TERENCE DANDRE MCMILLER,
Appellant

No. 05-16-01216-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 382nd Judicial District
Court, Rockwall County, Texas
Trial Court Cause No. 2-15-279.
Opinion delivered by Justice Whitehill.
Justices Francis and Stoddart participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered December 8, 2017.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

TERENCE DANDRE MCMILLER,
Appellant

No. 05-16-01217-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 382nd Judicial District
Court, Rockwall County, Texas
Trial Court Cause No. 2-15-280.
Opinion delivered by Justice Whitehill.
Justices Francis and Stoddart participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered December 8, 2017.