**Opinion issued August 7, 2018**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-17-00536-CR

———————————

**ANDREW KARIMI, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Court at Law No. 5**
**Travis County, Texas[1]**
**Trial Court Case No. C-1-CR-16-206159**

---

[1]     Pursuant to its docket equalization authority, the Supreme Court of Texas transferred this appeal from the Court of Appeals for the Third District of Texas to this court. *See* Misc. Docket No. 17–9128, Transfer of Cases from Courts of Appeals (Tex. Sept. 28, 2017); *see also* TEX. GOV'T CODE § 73.001 (authorizing transfer of cases). We are unaware of any conflict between precedent of that court and that of this court on any relevant issue. *See* TEX. R. APP. P. 41.3.

## MEMORANDUM OPINION

Andrew Karimi was charged with driving while intoxicated.[2] After the trial court denied his motion to suppress, Karimi entered a negotiated plea of "no contest."

In his sole issue on appeal, Karimi contends that the trial court erroneously denied his motion to suppress. He argues that an officer unlawfully detained him by lining up behind him in a Whataburger drive-through, then approaching his car and tapping on his window, which he voluntarily opened. We disagree and affirm.

## Background

Officer A. Morrison of the Austin Police Department was the only witness to testify at the trial court's hearing on Karimi's motion to suppress. After the parties submitted supplemental briefing, the trial court denied Karimi's motion. Karimi entered a negotiated plea of no contest for driving while intoxicated (DWI). The court sentenced him to six days' confinement and suspended his license for 90 days. The trial court issued fact findings as follows.

Officer Morrison received a 911 dispatch reporting a disturbance between a woman and a man in a black pickup truck. The woman was yelling.

One block from the 911 caller's location, Officer Morrison saw a black pickup truck matching the description turning into a Whataburger drive-through. Without

---

[2]  TEX. PENAL CODE § 49.04.

activating his overhead lights or siren, Officer Morrison pulled in line behind the suspected truck, joining the queue for fast food. While waiting in line, Officer Morrison exited his car, walked up to Karimi's truck, and tapped on his window. Karimi opened his window voluntarily.

When talking with Karimi, Officer Morrison observed signs of intoxication: a strong odor of alcohol, slow response, slurred speech, and glassy eyes. Karimi admitted that he had a few drinks before driving. Officer Morrison conducted a DWI investigation.

## Discussion

The trial court did not err in denying Karimi's motion to suppress.

### A.    Preservation of Error

As a preliminary matter, we are unpersuaded by the State's argument that Karimi failed to preserve error on this point. To preserve the issue of erroneously admitted evidence, a party must make a timely and specific objection and obtain a ruling from the trial court. TEX. R. APP. P. 33.1(a); *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003). The objection "must be specific enough so as to 'let the trial [court] know what he wants, why he thinks himself entitled to it, and do so clearly enough for the [trial court] to understand him at a time when the trial court is in a proper position to do something about it.'" *Resendez v. State*, 306 S.W.3d 308, 313 (Tex. Crim. App. 2009) (quoting *Lankston v. State*, 827 S.W.2d 907, 909

(Tex. Crim. App. 1992)); *see also Swain v. State*, 181 S.W.3d 359, 365 (Tex. Crim. App. 2005). In analyzing preservation, we review both the motion to suppress and the suppression hearing. *See Swain*, 181 S.W.3d at 365 (complaint preserved despite lack of timely request, objection, or motion stating grounds with sufficient specificity where "specific grounds were apparent from the context") (citing TEX. R. APP. P. 33.1); *see also Resendez*, 306 S.W.3d at 314–16.

At the suppression hearing, Karimi argued explicitly that Officer Morrison had unlawfully detained him and that the encounter was not consensual. Both parties fully argued and briefed the issue, and the trial court's findings of fact and conclusions of law make clear that it considered and rejected Karimi's position. Karimi preserved his argument.

## B. Standard of Review

In reviewing a motion to suppress, we apply a bifurcated standard of review. We afford almost complete deference to the trial court's determination of historical facts based on assessments of credibility and demeanor. *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). In contrast, we review de novo the legal question of whether a set of facts amount to a consensual police-citizen encounter or a detention under the Fourth Amendment. *Johnson v. State*, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013).

4

## C.    Legal Principles

The Fourth Amendment to the United States Constitution protects the right of the people to be "secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV; *see also* TEX. CONST. Art. 1 § 9.[3] Not all contact between the police and citizens constitutes a seizure. *See, e.g., Florida v. Bostick*, 501 U.S. 429, 433, 111 S. Ct. 2382, 2386 (1991) ("Obviously, not all personal intercourse between policemen and citizens involves 'seizures' of persons.") (quoting *Terry v. Ohio*, 392 U.S. 1, 19, n.16, 88 S. Ct 1868, 1879 n.16 (1968)).

Therefore, we must decide what type of citizen-police interaction occurred: a consensual encounter or an investigatory detention. *State v. Woodard*, 341 S.W.3d 404, 410–11 (Tex. 2011) (first citing *Florida v. Bostick*, 501 U.S. 429, 434, 111 S. 2382, 2386 (1991), then citing *Terry v.* 30–31, 88 S. Ct. 1868, 1884–85 (1968), and then citing *Gerstein v. Pugh*, 420 U.S. 103, 111–12, 95 S. Ct. 854, 862 (1975)).

A consensual encounter occurs when "an officer approaches a citizen in a public place to ask questions, and the citizen is willing to listen and voluntarily

---

[3]    Karimi focuses his argument on the Fourth Amendment to the United States Constitution. Because he did not brief a separate argument under the Texas Constitution, we do not address the protections provided by the Texas Constitution. *See* TEX. R. APP. P. 38.1(i); *Heitman v. State*, 815 S.W. 2d 681, 690–91 n. 23 (Tex. Crim. App. 1991); *Giles v. State*, No. 01-08-00410-CR, 2010 WL 2133893, at *6 (Tex. App.—Houston [1st Dist.] May 27, 2010, pet ref'd) (mem. op., not designated for publication).

answers." *Crain*, 315 S.W.3d at 49. A citizen can terminate a consensual encounter at will. *Woodard*, 341 S.W.3d at 411.

Consensual encounters are not seizures and do not implicate Fourth Amendment protections. *Id. See also Kentucky v. King*, 563 U.S. 452, 463, 131 S. Ct. 1849, 1858 (2011) ("[O]fficers may seek consent-based encounters if they are lawfully present in the place where the consensual encounter occurs."). An officer may initiate a consensual encounter without any indicia of criminal activity. *State v. Castleberry*, 332 S.W.3d 460, 466 (Tex. Crim. App. 2011) ("An officer is just as free as anyone to stop and question a fellow citizen."). "As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy . . . ." *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S. Ct. 1870, 1877 (1980); *see also Bostick*, 501 U.S. at 434, 111 S. Ct. at 2386 ("Our cases make it clear that a seizure does not occur simply because a police officer approaches an individual and asks a few questions. So long as a reasonable person would feel free to 'disregard the police and go about his business,' the encounter is consensual and no reasonable suspicion is required." (citation omitted)).

Conversely, detentions are seizures. *Woodard*, 341 S.W.3d at 411. A seizure occurs when "an officer, 'by means of physical force or show of authority, has in some way restrained the liberty of a citizen.'" *State v. Garcia-Cantu*, 253 S.W.3d

236, 242 (Tex. Crim. App. 2008) (quoting *Terry*, 392 U.S. at 19 n.16, 88 S. Ct. at 1879 n.16).

We evaluate every citizen-police encounter on its own terms. *See Garcia-Cantu*, 253 S.W.3d at 243. Generally, an encounter is no longer consensual if an officer restrains a citizen's liberty through force or showing of authority. *Woodard*, 341 S.W.3d at 411; *Crain*, 315 S.W.3d at 49; *see also Garcia-Cantu*, 253 S.W.3d at 243 ("It is the display of official authority and the implication that this authority cannot be ignored, avoided, or terminated, that results in a Fourth Amendment seizure."). We focus on whether the officer conveyed a message that compliance with his request was required. *Crain*, 315 S.W.3d at 49; *see also Garcia-Cantu*, 253 S.W.3d at 243.

The ultimate question is whether a reasonable person in the citizen's position would have felt free to decline the officer's requests or otherwise terminate the encounter. *Crain*, 315 S.W.3d at 49. In answering this question, we consider the totality of the circumstances. *Woodard*, 341 S.W.3d at 411; *see also Garcia-Cantu*, 253 S.W.3d at 244 ("A court must step into the shoes of the defendant and determine from a common, objective perspective whether the defendant would have felt free to leave." (quotation omitted)). "If it was an option to ignore the request or terminate the interaction, then a Fourth Amendment seizure has not occurred." *Woodard*, 341 S.W.3d at 411.

**D.    Analysis**

Because Karimi's encounter with the police was consensual, we affirm the trial court's denial of Karimi's motion to suppress.

Karimi's sole argument on appeal is that Officer Morrison improperly seized him by queuing behind him in the drive-through line, approaching him, and tapping on his window. Karimi argues that a reasonable person in his position would not have felt free to decline the encounter. Karimi contends that Officer Morrison's pulling into the drive-through line behind him "box[ed]" him in, and that Officer Morrison was uniformed and in a marked patrol car.[4]

The crux of our inquiry is whether a reasonable person would have felt free to decline the officer's request and terminate the encounter. *See Bostick*, 501 U.S. at 436, 111 S. Ct. at 2387; *see also State v. Velasquez*, 994 S.W.2d 676, 679 (Tex. Crim. App. 1999). The answer is yes.

---

[4]    Karimi also cites to Officer Morrison's testimony that if Karimi had tried to leave, Officer Morrison would have activated his emergency lights and pulled him over. But as the Court of Criminal Appeals has recognized, "an officer's subjective intent 'to investigate' is relevant only to the extent to which such an intent is communicated to the citizen by means of an authoritative voice, commanding demeanor, or other objective indicia of official authority." *State v. Garcia-Cantu*, 253 S.W.3d 236, 244 n.4 (Tex. Crim. App. 2008); *see also Pena v. State*, No. 01-01-00436-CR, 2002 WL 537996, at *2 (Tex. App.—Houston [1st Dist.] Apr. 11, 2002, no pet.) (not designated for publication) ("[A]n officer's subjective intent, when not conveyed to the suspect in words or actions, is irrelevant to our determination."). There is nothing in the record suggesting that Officer Morrison communicated his intent to Karimi.

Officer Morrison lining up behind Karimi in the Whataburger drive-through, just as anyone else could have done, did not render the encounter a nonconsensual detention. As a baseline, Officer Morrison's joining the queue was not objectively threatening; he showed no force or authority. He did not activate his lights or sirens. He instead pulled up his car as he would have done if he had been lining up for a Double Whataburger. As the trial court explained in its findings of fact, "[o]fficers can go to Whataburger just like anyone else." *See Walter v. State*, 28 S.W.3d 538, 544 (Tex. Crim. App. 2000) ("[The officer] had every right to be standing where he was at the time he observed the drugs, just like any private citizen or any other police officer would have been permitted to stand there. This is true regardless of the fact that [the officer]'s subjective intent was to conduct a canine sweep of the vehicle."). No evidence suggests that Karimi even knew that a police car had pulled into the drive-through line behind him. *See, e.g.*, *Shimko v. State*, No. PD-1639-15, 2017 WL 604065, at *6 (Tex. Crim. App. Feb. 15, 2017) (in holding encounter was consensual, court considered lack of evidence that defendant saw officer wave him over before defendant stopped).

As the trial court found, Officer Morrison's positioning did not "wholly limi[t]" Karimi's means of egress—"cars in a drive-thru line move forward as the queue progresses." Karimi was free to exit forward through the drive-through as the line progressed. And any restriction on Karimi's freedom of movement was caused

by a factor independent of police conduct; the relevant inquiry is whether Karimi felt free to terminate any encounter with Officer Morrison. *Bostick*, 501 U.S. at 436, 111 S. Ct. at 2387 ("Bostick's freedom of movement was restricted by a factor independent of police conduct—i.e., by his being a passenger on a bus. Accordingly, the 'free to leave' analysis on which Bostick relies is inapplicable. In such a situation, the appropriate inquiry is whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter."); *State v. Lyons*, No. 05-13-01607-CR, 2014 WL 3778913, at *6 (Tex. App.—Dallas July 31, 2014 pet ref'd). Officer Morrison's queuing behind Karimi did not render the encounter a detention.

The other circumstances—a uniformed police officer, where he was lawfully present, approaching Karimi's vehicle and tapping on a window (which Karimi voluntarily opened)—do not lead to a different conclusion. "The mere approach and questioning of [a person in a parked car] does not constitute a seizure. The result is not otherwise when the officer utilizes some generally accepted means of gaining the attention of the vehicle occupant or encouraging him to eliminate any barrier to conversation." *Garcia-Cantu*, 253 S.W.3d at 243 (citation omitted); *see also King*, 563 U.S. at 463, 131 S. Ct. at 1858 ("If consent is freely given, it makes no difference that an officer may have approached the person with the hope or expectation of obtaining consent."); *Ashton v. State*, 931 S.W.2d 5, 7 (Tex. App.—Houston [1st

10

Dist.] 1996, pet. ref'd) (no investigatory detention occurred when police officer approached appellant sitting in parked car in public place and asked her to roll down window).

Nothing in this record suggests that Officer Morrison showed force or authority. He did not flash his lights, sound the sirens, display a weapon, shine a light at Karimi, or demand identification. *See Bostick*, 501 U.S. at 434, 111 S. Ct. at 2386 ("Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred.") (quoting *Terry*, 392 U.S. at 19 n.16, 88 S. at 1879 n.16); *Shimko*, 2017 WL 604065, at *4-7.[5]

On these facts, a reasonable person would have felt free to terminate the encounter. *See Velasquez*, 994 S.W.2d at 679; *see also Garcia-Cantu*, 253 S.W.3d

---

[5] *Cf. Garcia-Cantu*, 253 S.W.3d at 249–50 (A reasonable person in defendant's position would not have felt free to terminate encounter when, in early morning, officer boxed in defendant's car, used spotlight and authoritative tone of voice, stood toe-to-toe with defendant, shining flashlight across defendant's eyes, and asked defendant for identification); *Johnson v. State*, 414 S.W.3d 184, 193–94 (Tex. Crim. App. 2013) (encounter was nonconsensual when police officer used his patrol car to partially block defendant's car and officer shined "pretty darn bright" high-beam spotlight into car, addressed defendant in "'loud[,] authoritative voice," asked "what's going on," and demanded identification).

at 243. The trial court did not err in concluding that the encounter was consensual.[6]

We overrule Karimi's sole issue.

## Conclusion

We affirm the trial court's judgment.

Jennifer Caughey
Justice

Panel consists of Justices Bland, Lloyd, and Caughey.

Do not publish. TEX. R. APP. P. 47.2(b).

---

[6] Because the encounter was consensual, we do not reach Karimi's argument that Officer Morrison did not have reasonable suspicion to approach him. *See* TEX. R. APP. P. 47.1.